Robert L. BLASKE, Appellant,

v.

SMITH & ENTZEROTH, INC.,
et al., Respondents.

Heather Nicole CASE, a minor,
et al., Appellants,

v.

SVERDRUP & PARCEL AND
ASSOCIATES, INC., et al.,
Respondents.

Robert J. HERTLEIN and Caroline
T. Hertlein, Appellants,

v.

SVERDRUP & PARCEL AND
ASSOCIATES, INC., et al.,
Respondents.

Vernon DILLMAN, Appellant,

v.

The MISSOURI HIGHWAY AND
TRANSPORTATION COMMISSION, et
al., Respondents.

Nos. 73588, 73612 and 73631.

Supreme Court of Missouri,
En Banc.

Dec. 17, 1991.

Rehearing Denied Feb. 28, 1992.

Branson Wood III, Palmyra, Edward L. Dowd, Jr., Robert F. Ritter, M. Jane Matoesian, St. Louis, for appellant.

Kenneth A. Slavens, John P. Palombi, Steven D. Asher, Larry Valentine, Ralph K. Soebbing, Colleen M. Joern, Brent Baldwin, Thomas B. Tobin, Colleen C. Jones, Lawrence B. Grebel, Michael E. Bub, Kenneth Slavens, John P. Palombi, Steven D. Asher, John R. Musgrave, Timothy F. Noelker, Bruce D. Ryder, Gary T. Sacks, Douglas E. Gossow, St. Louis, for respondents.

J. Roger Edgar, James L. Hawkins, St. Louis, for amicus American Institute of Architects, et al.

THOMAS, Judge.

In this case the Court considers the constitutionality of § 516.097, RSMo 1986, a 10 year statute of repose protecting architects, engineers and persons who furnished construction services from liability arising out of a defective or unsafe condition of any improvement to real property. We hold that the statute is constitutional; it is not invalidated by any of the four constitutional challenges; i.e., Equal Protection, Special Legislation, Access to the Courts, and Due Process.

Four cases are consolidated for this appeal. Three of the cases involve two wrongful deaths (Bobbie Jean Case and Sandra Bernice Hertlein) and a claim for personal injuries (Vernon Dillman, Jr.). Each case arose out of automobile accidents that occurred at the Union Boulevard exit ramp of westbound Interstate 70 in the City of St. Louis. The accident in which Bobbie Jean Case and Sandra Bernice Hertlein were killed occurred on November 21, 1989; the accident in which Vernon Dillman, Jr., was injured occurred on March 5, 1989. The parties agree that the construction of the improvements to the real property (the interstate highway and exit ramp) were completed more than 10 years prior to these accidents.[1] Defendant Sverdrup Parcel & Associates provided architectural and engineering services for the design of the exit ramp; defendant Millstone constructed the highway and exit ramp. All parties agree that the protection provided by § 516.097, the statute of repose, includes both of these defendants.[2]

The other case involves plaintiff Robert L. Blaske, who was seriously injured when he fell from a platform fourteen feet above the ground, which was a permanent structure designed and built to provide service access to the air handling equipment (air conditioning and ventilating system) for the Student Union Building at Meramec Community College. Plaintiff's petition alleges that the platform was negligently designed, engineered and constructed in that it had no guard rails or hand rails and that the platform "blended-in" with an adjacent, lightweight dropped-ceiling so that the platform was indistinguishable from the dropped-ceiling. Plaintiff also alleged defendants were negligent in designing and placing the air handling unit over the dropped-ceiling rather than over the platform.

It is alleged that defendant SnyderGeneral Corporation (also known as McQuay, Inc.) manufactured the air handling unit. The other defendants are the architects[3]

---

1. The construction of the interstate highway and exit ramp was completed before February 1969, more than 20 years prior to the accidents; the design services by defendant Sverdrup & Parcel and Associates, Inc., for the exit ramp at Union Boulevard and Interstate 70 were completed in November 1958, more than 30 years prior to the accidents.

2. The Missouri Highway and Transportation Commission and the City of St. Louis are also defendants in the Dillman case. Neither of these defendants claim to be protected by § 516.097 and neither is a party to this appeal. No further reference will be made herein to these defendants.

3. It is alleged that defendant Smith & Entzeroth, Inc., performed the architecture and design ser-

and engineers[4] who designed and engineered the platform and the installation and placement of the air handling unit and the contractors[5] who constructed the platform and installed the air handling unit. All of the parties agree that the construction was completed more than 10 years prior to June 4, 1987,[6] when plaintiff Blaske fell and was injured.

All parties agree that all defendants except defendant SnyderGeneral are within the purview of the statute. Defendant SnyderGeneral claims it is within the purview of the statute because it "manufactured" the air handling unit, which is an improvement to real property for purposes of § 516.097. Plaintiff Blaske claims that defendant SnyderGeneral, as a manufacturer and seller of a pre-built air conditioner, is a materialman and is not protected by the statute, which only, protects persons providing architectural, engineering and construction services.

The respective trial courts sustained the motion to dismiss or the motion for summary judgment of each of the defendants on the ground that each is protected by § 516.097. All four cases were consolidated for appeal because the issue of whether § 516.097 is unconstitutional is common to all four cases.

Section 516.097, RSMo, enacted in 1976, effective August 13, 1976, provides as follows:

**Tort action against architects, engineers or builders of defective improvement to real property must be brought within ten years of completion of improvement, exceptions.—**

1. Any action to recover damages for personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property, including any action for contribution or indemnity for damages sustained on account of the defect or unsafe condition, shall be commenced within ten years of the date on which any such improvement is completed.

2. This section shall only apply to actions against any person whose sole connection with the improvement is performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement.

3. If any action is commenced against any person specified by subsection 2, any such person may, within one year of the date of the filing of such an action, notwithstanding the provisions of subsection 1, commence an action or a third party action for contribution or indemnity for damages sustained or claimed in any action because of personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property.

4. This section shall not apply if:

vices for the concrete platform and placement and installation of the air handling unit. Several other defendants are included because it is alleged they are successors in interest to Smith & Entzeroth, Inc. Smith & Entzeroth, Inc., sold certain of its assets to defendant Stone, Marraccini and Patterson, Inc., in July of 1986 and changed its name to Micki–Barb, Inc., which is also a defendant. It is also alleged that Micki–Barb, Inc., forfeited its corporate charter on January 1, 1988, and at the time of the forfeiture defendant Eric W. Smith, Jr., defendant Robert Entzeroth and defendant Bertram Tremayne were members of the last Board of Directors and became statutory trustees. None of these defendants other than Smith & Entzeroth, Inc., performed any architectural services but are included as defendants by virtue of the legal relationships alleged. However, if defendant Smith & Entzeroth, Inc., was properly dismissed

from the lawsuit, then these other defendants are likewise entitled to be dismissed.

4. It is alleged that defendant William Tao and Associates, Inc., engineered the platform and the installation and placement of the air handler unit.

5. It is alleged that defendant C. Rallo Contracting Company, Inc., built the concrete platform and installed and placed the air handler unit; it is alleged that defendant Rockhill Mechanical Corporation, defendant Carl I. Schaeffer Electric Company, and defendant Century Electric Company installed the air handling unit.

6. The construction of the platform which plaintiff Blaske fell from and Student Union Building at Meramec Community College was completed in 1967, approximately 20 years prior to plaintiff Blaske's injury.

(1) An action is barred by another provision of law;

(2) A person conceals any defect or deficiency in the design, planning or construction, including architectural, engineering or construction services, in an improvement for real property, if the defect or deficiency so concealed directly results in the defective or unsafe condition for which the action is brought;

(3) The action is brought against any owner or possessor of real estate or improvements thereon.

5. The statute of limitation for buildings completed on August 13, 1976, shall begin to run on August 13, 1976, and shall be for the time specified herein.

Other states enacted similar statutes beginning in the late 1960s.[7] These statutes were enacted in response to case decisions around the country that had done away with the necessity of privity between the plaintiff and the architect, engineer or builder. This had resulted in these parties having potential liability many years after they ceased to be connected in any way with the improvement.[8] Presently, thirty-five states have statutes that impose time limitations upon actions against architects and builders for injuries or deaths caused by defective or unsafe conditions of improvements on real property.[9] Generally,

7. Comment, A Defense Catalogue for the Design Professional, 45 U.M.K.C.L.Rev. 75, 91 (1976).

8. Comment, Limitation of Actions Statutes for Architects and Builders—Blueprints for Non-Action, 18 Cath.U.L.Rev. 361 (1968).

9. Ariz.Rev.Stat. § 12–552 (Supp.1991) (eight years); Ark.Stat. § 16–56–112 (1987) (five years), constitutionality of predecessor, Ark. Stat. § 37–238, upheld in *Carter v. Hartenstein,* 248 Ark. 1172, 455 S.W.2d 918 (1970); Cal.Civ. Proc.Code § 337.15 (1982) (ten years), constitutionality upheld in *Barnhouse v. City of Pinole,* 133 Cal.App.3d 171, 183 Cal.Rptr. 881 (1982); Colo.Rev.Stat. § 13–80–127 (1987) (six years), constitutionality upheld in *Yabro v. Hilton Hotels Corporation,* 655 P.2d 822 (Colo.1982); Conn.Gen.Stat.Rev. § 52–584a (1991) (seven years), constitutionality upheld in *Zapata v. Burns,* 207 Conn. 496, 542 A.2d 700 (1988); Del. Code tit. 10, § 8127 (1974) (six years), constitutionality upheld in *Cheswold Volunteer Fire Company v. Lambertson Construction Company,* 489 A.2d 413 (Del.1984); D.C.Code § 12–310 (1989) (ten years), constitutionality upheld in *Britt v. Schindler Elevator Corporation,* 637 F.Supp. 734 (D.D.C.1986); Ga.Code § 9–3–51 (1982) (eight years), constitutionality upheld in *Mullis v. Southern Company Services, Inc.,* 250 Ga. 90, 296 S.E.2d 579 (1982); Idaho Code § 5–241 (1990) (six years), constitutionality upheld in *Twin Falls Clinic & Hospital Building Corporation v. Hamill,* 103 Idaho 19, 644 P.2d 341 (1982); Ill.Rev.Stat. ch. 110, para. 13–214(b) (Supp.1991) (ten years), constitutionality upheld in *Cross v. Ainsworth Seed Co.,* 199 Ill.App.3d 910, 145 Ill.Dec. 927, 557 N.E.2d 906 (1990), but see *Skinner v. Anderson,* 38 Ill.2d 455, 231 N.E.2d 588 (1967), which held a predecessor statute unconstitutional on special legislation grounds; Ind.Code § 34–4–20–2 (1968) (twelve years), constitutionality upheld in *Beecher v. White,* 447 N.E.2d 622 (Ind.1983); La.Rev.Stat. § 9:2772 (1991) (ten years after the date of registry in the mortgage office of acceptance of work by owner or if no acceptance within six months of occupation or possession by owner, ten years after the improvement has been occupied by owner), constitutionality upheld in *Burmaster v. Gravity Drainage District No. 2,* 366 So.2d 1381 (La.1978); Maine Rev.Stat. § 14–752–A (1980) (actions must be brought against design professionals four years after malpractice or negligence occurs but not more than ten years after substantial completion of services provided); Md.Cts. & Jud.Proc.Code § 5–108 (Supp.1991) (twenty years after the date the entire improvement first becomes available for its intended use, or ten years in an action against architects, professional engineers, or contractors), constitutionality upheld in *Whiting–Turner Contracting Company v. Coupard,* 304 Md. 340, 499 A.2d 178 (1985); Mass.Gen.L. ch. 260, § 2B (Supp.1991) (six years after the earlier of the opening of the improvement to use or substantial completion of the improvement & taking of possession for occupancy by the owner), constitutionality upheld in *Klein v. Catalano,* 386 Mass. 701, 437 N.E.2d 514 (1982); Mich.Comp.Laws § 600.5839(1) (1987) (six years after time of occupancy of completed improvement, use, or acceptance of the improvement, or one year after defect is discovered or should have been discovered; however, no action can be maintained ten years after the time of occupancy of the completed improvement, use, or acceptance of the improvement), constitutionality upheld in *O'Brien v. Hazelet & Erdal,* 410 Mich. 1, 299 N.W.2d 336 (1980); Minn.Stat. § 541.051 (Supp.1991) (ten years), constitutionality upheld in *Calder v. City of Crystal,* 318 N.W.2d 838 (Minn.1982); Miss.Code § 15–1–41 (Supp.1991) (six years), constitutionality upheld in *Reich v. Jesco, Inc.,* 526 So.2d 550 (Miss. 1988); Mont.Rev.Code § 27–2–208 (1991) (ten years), constitutionality of predecessor, Mont. Rev.Code § 93–2619, upheld in *Reeves v. Ille Electric Company,* 170 Mont. 104, 551 P.2d 647 (1976); Neb.Rev.Stat. § 25–223 (1989) (ten years beyond time of act giving rise to the cause

these statutes provide for a period of four to twenty years following the substantial completion of an improvement in which action may be brought against design professionals. Thirty-two of these thirty-five states have held these statutes constitutional;[10] the remaining three states have not yet considered this issue.[11] Eleven other jurisdictions have enacted similar statutes, which have been declared unconstitutional.[12]

 Before discussing each of the four constitutional attacks on the statute, it is appropriate to discuss some general principles that this Court has consistently applied in evaluating the constitutionality of a statute. A statute is presumed to be constitutional and will not be held to be unconstitutional unless it clearly and undoubtedly contravenes the constitution; it should be enforced by the courts unless it plainly and palpably affronts fundamental law embodied in the constitution. *Winston v. Reorganized School District R-2, Lawrence County,* 636 S.W.2d 324, 327 (Mo. banc 1982). When the constitutionality of a statute is attacked, the burden is upon the party claiming the statute is unconstitu-

of action), constitutionality upheld in *Williams v. Kingery Construction Company,* 225 Neb. 235, 404 N.W.2d 32 (1987); Nev.Rev.Stat. § 11.204 (1991) (eight years), constitutionality upheld in *Wise v. Bechtel Corporation,* 104 Nev. 750, 766 P.2d 1317 (1988); N.J.Rev.Stat. § 2A:14–1.1 (1987) (ten years), constitutionality upheld in *Rosenberg v. Town of North Bergen,* 61 N.J. 190, 293 A.2d 662 (1972); N.M.Stat. § 37–1–27 (1990) (ten years), constitutionality upheld in *Terry v. New Mexico Hwy. Comm'n,* 98 N.M. 119, 645 P.2d 1375 (1982); N.C.Gen.Stat. § 1–50(5) (Supp.1991) (six years), constitutionality upheld in *Lamb v. Wedgewood South Corporation,* 308 N.C. 419, 302 S.E.2d 868 (1983); N.D.Cent.Code § 28–01–44 (1991) (ten years), constitutionality upheld in *Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733 (N.D.1988); Ohio Rev.Code § 2305.131 (1990) (ten years), constitutionality upheld in *Sedar v. Knowlton Construction Company,* 49 Ohio St.3d 193, 551 N.E.2d 938 (1990); Okla.Stat. tit. 12, § 109 (1988) (ten years), constitutionality upheld in *St. Paul Fire & Marine Insurance Company v. Getty Oil Company,* 782 P.2d 915 (Okla.1989); Ore.Rev.Stat. § 12.115 (1988) ("In no event shall any action for negligent injury to person or property of another be commenced more than ten years from the date of the act or omission complained of."), constitutionality upheld in *Josephs v. Burns,* 260 Or. 493, 491 P.2d 203 (1971); Pa.Stat. tit. 42, § 5536 (1981) (ten years) constitutionality of predecessor, Pa.Stat. tit. 12, § 65.1, upheld in *Freezer Storage, Inc. v. Armstrong Cork Company,* 476 Pa. 270, 382 A.2d 715 (1978); R.I.Gen.Laws § 9–1–29 (1985) (ten years), constitutionality upheld in *Leeper v. Hillier Group, Architects Planners, P.A.,* 543 A.2d 258 (R.I.1988); Tenn.Code Ann. § 28–3–202 (1980) (four years), constitutionality upheld in *Harmon v. Angus R. Jessup Associates, Inc.,* 619 S.W.2d 522 (Tenn.1981); Tex.Civ.Prac. and Rem.Code § 16.008 (1986) (ten years), constitutionality upheld in *Suburban Homes v. Austin-Northwest Development Company,* 734 S.W.2d 89 (Tex.App.1987); Va.Code § 8.01–250 (1984) (five years), constitutionality upheld in *Hess v. Snyder Hunt Corporation,* 240 Va. 49, 392 S.E.2d 817 (1990); Wash.Rev.Code § 4.16.-310 (1988) (six years), constitutionality upheld

in *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.,* 81 Wash.2d 528, 503 P.2d 108 (1972); and W.Va.Code § 55–2–6a (Supp.1991) (ten years).

**10.** See cases cited in footnote 8, *supra.*

**11.** Arizona, Maine and West Virginia. *See* footnote 8, *supra.*

**12.** *Jackson v. Mannesmann Demag Corp.,* 435 So.2d 725 (Ala.1983) (holding that the statute of repose violates open courts provision); *Turner Construction Company, Inc. v. Scales,* 752 P.2d 467 (Alaska 1988) (finding that the statute violates equal protection because it classifies design professionals); *Overland Construction Company, Inc. v. Sirmons,* 369 So.2d 572 (Fla. 1979) (stating that the statute violates access to the courts); *Fujioka v. Kam,* 55 Hawaii 7, 514 P.2d 568 (1973) (finding a violation of equal protection); *Tabler v. Wallace,* 704 S.W.2d 179 (Ky.1985), *cert. denied,* 479 U.S. 822, 107 S.Ct. 89, 93 L.Ed.2d 41 (1986) (holding that the five year statute of repose violated special legislation clause); *Henderson Clay Products, Inc. v. Edgar Wood & Associates, Inc.,* 122 N.H. 800, 451 A.2d 174 (1982) (holding the statute of respose unconstitutionally discriminatory); *Broome v. Truluck,* 270 S.C. 227, 241 S.E.2d 739 (1978) (stating that the statute violates equal protection); *Daugaard v. Baltic,* 349 N.W.2d 419 (S.D. 1984) (finding the statute to violate open courts provision); *Horton v. Goldminer's Daughter,* 785 P.2d 1087 (Utah 1989) (holding the statute violates open courts provision); *Funk v. Wollin Silo & Equipment, Inc.,* 148 Wis.2d 59, 435 N.W.2d 244 (1989) (finding that the six year statute of repose violates equal protection); and *Phillips v. ABC Builders, Inc.,* 611 P.2d 821 (Wyo.1980) (holding that the statute of repose violates open courts, equal protection, and special laws clauses). Kansas and New York have statutes of repose, but they are not specifically for architects and builders for improvements to real property. Iowa and Vermont do not appear to have similar statutes.

tional to prove the statute is unconstitutional. *Schnorbus v. Director of Revenue*, 790 S.W.2d 241, 243 (Mo. banc 1990).

■ With respect to the claim that a statutory classification is violative of equal protection, a challenger must prove abuse of legislative discretion beyond a reasonable doubt and, short of that, the statute is valid. *Winston*, 636 S.W.2d at 327. In particular, plaintiffs claim that this statute denies them equal protection of the laws as required by the fourteenth amendment of the United States Constitution and violates equal protection as set forth in article I, § 2, of the Missouri Constitution.

■ Analysis of an equal protection claim involves a two step process. The first step is to determine whether the classification burdens a "suspect class" or impinges upon a "fundamental right"; in either event, strict judicial scrutiny is required. If no such right or category is present, then the statute will be upheld and a classification sustained if the classification is rationally related to a legitimate state interest.

■ Neither a "suspect class" nor a "fundamental right" is at issue in this case. "Fundamental rights" include such things as freedom of speech, freedom of the press, freedom of religion, the right to vote and the right to procreate. *State Board of Registration v. Griffin*, 651 S.W.2d 475, 479–480 (Mo. banc 1983). Similarly, a suspect classification is one that is inherently suspect in a constitutional sense. These are classes such as those based upon race, national origin, or illegitimacy which, because of historical reasons, need special protection from a political process controlled by the majority. *Mahoney v. Doerhoff Surgical Services*, 807 S.W.2d 503, 512 (Mo. banc 1991).

■ Plaintiffs make no claim that either a fundamental right or a suspect classification is present in this case, and neither is. Thus, strict judicial scrutiny is not required, and the statute will be upheld and the classification sustained if it is rationally related to a legitimate state interest. This Court has often articulated the minimal nature of a "rational basis" analysis. In *Schnorbus*, 790 S.W.2d at 243, we said that the standard for review for equal protection claims made under the United States Constitution is "the 'lenient standard of rationality.' ... A classification will be sustained if any state of facts reasonably can be conceived to justify it." In *Mahoney*, we pointed out that the "rational basis" test for equal protection "is offended only if the classification rests on grounds wholly irrelevant to the achievement of the state's objective." *Mahoney*, 807 S.W.2d at 512. We went on to say:

> State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.... In this assessment, "States are not required to convince the courts of the correctness of their legislative judgments. Rather, 'those challenging the legislative judgment must convince the court the legislative facts upon which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.'"

*Id.* In *Winston*, we pointed out that "It is not [the Court's] province to question the wisdom, social desirability or economic policy underlying a statute as these are matters for the legislature's determination." *Winston*, 636 S.W.2d at 327.

The issues then become a question of what classifications did the legislature establish by § 516.097, and are there possible rational reasons for those classifications? Potential defendants in actions arising out of defective or unsafe conditions of improvements to real property fit naturally into four categories based on their involvement in the construction and subsequent operation of the property: (1) persons who furnish planning or design services (primarily architects and engineers, hereinafter called "designers"); (2) persons performing the actual construction of the improvement ("builders"); (3) persons who supply products or raw materials for the

construction ("materialmen"); and (4) persons owning or possessing the real property ("owners and occupiers"). The first and second categories (designers and builders) are covered by the statute; the third and fourth categories (materialmen, and owners and occupiers) are excluded.

In deciding to distinguish between materialmen as opposed to designers and builders, the legislature may have considered that designers and builders of improvements to real property face unique and different problems in every project. No two pieces of real estate are identical, and each presents its own unique problems and solutions. There is no such thing as a mass-produced improvement to real property. In *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 382 A.2d 715, 719 (1978), the Pennsylvania court, in upholding a statute similar to the Missouri statute, stated:

> Further, every building is unique and far more complex than any of its component parts. Even in the most uniform-looking suburban subdivision, each house stands on a separate plot of land; each lot may have slightly different soil conditions; one may be near the underground stream; and so forth.

In contrast, materialmen typically produce and supply their products in large quantities, which are standardized in terms of design, available sizes and models, etc. Materialmen normally do not produce customized products, whereas every improvement to real property is, in a sense, customized. Moreover, materialmen normally produce their product in the controlled environment of the factory or other production facility specifically designed for that purpose. All of these factors offer materialmen a superior opportunity to pretest and continually improve their product and design. Standardized products and standardized production facilities obviously afford materialmen a better opportunity for higher quality control standards than are available to the designers or builders of improvements to real property where neither the end product nor the location of construction are standardized.

Put simply, the materialman who produces 1,000 widgets every day has a much better chance of producing the perfect product time after time than the architect, engineer or builder who undertakes a new and different project on new and different real property from project to project. This basic difference in the job undertaken and the problems faced by materialmen as compared to those faced by designers and builders affords the legislature a rational basis for including designers and builders within the protection of the statute while excluding materialmen.

The distinction between designers and builders as compared to owners and occupiers of the real property is even more striking. Once construction is completed, the designers and builders normally cease to be connected with the improvement, while owners and occupiers continue in control of the improvement during its useful life. Moreover, in instances where ownership or possession changes during the useful life of the real property, the common law generally affords protection to former owners and occupiers as opposed to persons owning or occupying at the time of the injury. The common law seldom results in liability for former owners or operators who are not connected to the property at the time of the injury. This is an instance in which the common law reflects a rationale similar to that reflected in the statute, *i.e.*, that after passage of a reasonable period of time, persons no longer associated with the property should not be held liable for injury or death caused by defective or unsafe conditions of the property.

In support of the rationale for protecting designers and builders but not owners and occupiers, it is undoubtedly true that the extent to which owners and occupiers maintain the property, search out problems and correct them, and generally operate the facility in a careful and responsible manner largely dictate the extent to which personal injury or wrongful death may be caused by the property in the long range future. Moreover, as time passes, ownership and occupancy policies become increasingly more important, while design and construction decisions and procedures typically de-

crease in importance. It is certainly rational that the legislature might conclude that after 10 years the liability potential of designers and builders should be foreclosed but that the responsibility and, thus, the liability potential, of owners and occupiers should continue contemporaneous with their continuing control of the property.

Several jurisdictions [13] have adopted statutes identical or similar to § 516.097; the majority of these courts, as well as the better reasoned opinions, hold that the inclusion of architects, engineers and builders within the statute while excluding materialmen and owners and occupiers rests on a rational basis and does not violate equal protection. Authorities that articulate this same rational basis reasoning (superior opportunity for quality control by materialmen and continued control of the real property by owners and occupiers) include: *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo.1982); *Burmaster v. Gravity Drainage Dist. No. 2*, 366 So.2d 1381 (La.1978); *Cheswold Volunteer Fire Co. v. Lambertson Const. Co.*, 489 A.2d 413 (Del. 1984) (involving a six year statute of repose); *Klein v. Catalona*, 386 Mass. 701, 437 N.E.2d 514 (1982) (also involving a six year statute of repose); and *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (Ct.App. 1977), *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977). We hold, as did these courts, that the statute of repose set forth in § 516.097 does not violate the equal protection clause of either the United States Constitution or the Constitution of Missouri.

Having considered the defendants' equal protection arguments, it is appropriate to next consider whether § 516.097 is prohibited "Special Legislation" under article III, § 40, of the Missouri Constitution, which provides in part as follows:

> **Section 40. Limitations on passage of local and special laws.** The general assembly shall not pass any local or special law:

> . . . .

> (6) for limitation of civil actions;

**13.** See cases cited in footnote 8, supra.

. . . .

> (28) granting to any corporation, association or individual any special or exclusive right, privilege or immunity, . . .

> . . . .

> (30) where a general law can be made applicable, and whether a general law could have been made applicable is a judicial question to be judicially determined without regard to any legislative assertion on that subject.

The prohibition of "local laws" refers to legislative acts that single out a particular unit of local government in a certain location, such as a particular city, township or county; § 516.097 does not purport to make any such distinction, so the prohibition against "local laws" is not at issue.

We have defined a "special law" as "[a] law which includes less than all who are similarly situated ..., but a law is not special if it applies to all of a given class alike and the classification is made on a reasonable basis." *Ross v. Kansas City General Hospital and Medical Center*, 608 S.W.2d 397, 400 (Mo. banc 1980). In *State v. County Court of Greene County*, 667 S.W.2d 409, 412 (Mo. banc 1984), we pointed out that:

> [I]t is not enough to demonstrate constitutional invalidity to conclude that the statute excepts from its scope persons or things which would, but for the exception, otherwise be affected. In order to find such a statute invalid as a special law, it must be found that members of the stated class are omitted "whose relationship to the subject-matter cannot by reason be distinguished from that of those included."

A claim that a statute is invalid as a "special law" inevitably incorporates the argument that the statute treats some members of the class differently than others. Whether this argument can be successfully made depends upon the threshold issue of what constitutes the limits of the class. One approach is to assume that the

legislature defines the class, which they are entitled to do, and that the class, in effect, consists of those persons whom the legislature determined are to be affected in a certain manner by the statute. For example, in the present case, under this analysis, the class consists of designers and builders as opposed to materialmen and owners and operators, who are outside the statute. Using this approach, the answer to the first inquiry, "Are all members of the class treated the same?" will always be in the affirmative, and the issue of whether this is prohibited special legislation will turn on the question of whether the legislature had a rational basis for establishing the limits of the class as it did. Was it rational to place designers and builders within the class while excluding materialmen and owners and operators?

An alternative analysis (which is really only different in semantics) is to assume that the class is all potential tortfeasors who might conceivably have liability as a result of their relationship to the property and to recognize that the legislature is not obligated to treat all members of the class the same so long as some characteristic of the portion of the class excluded provides a reasonable basis for its exclusion.

Either analysis leads to the principles we have previously discussed in our equal protection analysis of the rational basis for the legislature distinguishing between designers and builders on the one hand and materialmen on the other. These factors include the increased opportunity for quality control and mass production planning available to materialmen, which is not present in the planning and construction of an improvement to real property, and the fact that owners and operators remain in control of the property whereas designers and builders generally have no further relationship with the property once construction is completed. In essence, the test for "special legislation" under article III, § 40, of the Missouri Constitution, involves the same principles and considerations that are involved in determining whether the statute violates equal protec-

tion in a situation where neither a fundamental right nor a suspect class is involved, *i.e.*, where a rational basis test applies. For the reasons discussed above with regard to equal protection, as well as the matters discussed herein regarding special legislation, we hold that § 516.097, is not prohibited special legislation under article III, § 40, of the Constitution of Missouri.

We next consider whether § 516.097 violates the "open courts" provision of the Missouri Constitution. Article I, § 14 provides:

[t]hat the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay.

It is all too easy to assume that this provision means that a plaintiff can always go to court and obtain a judgment on the claim asserted; it obviously does not mean this. Thus, the major issue in almost every consideration of the open courts provision is to determine exactly where the courts draw the line between the right of the legislature to modify the substantive law to eliminate or restrict some cause of action and the right of an individual litigant to have open access to the courts to obtain some remedy available under the applicable substantive law.

Two relatively recent Missouri cases demonstrate the meaning of this constitutional provision. In *State ex rel. Cardinal Glennon Memorial Hospital v. Gaertner*, 583 S.W.2d 107 (Mo. banc 1979), this Court deemed the requirement that a malpractice plaintiff submit his or her claim to the Professional Liability Review Board Authority before filing a malpractice action in court to constitute an unconstitutional precondition on the plaintiff's right to access to the courts in violation of article I, § 14. On the other hand, in *Harrell v. Total Health Care, Inc.*, 781 S.W.2d 58 (Mo. banc 1989), this Court held that a statute that granted immunity from malpractice claims to a Health Maintenance Organization (HMO) corporation did not violate this clause of the constitution. In these two

cases, this Court draws an important distinction between a statute that creates a condition precedent to the use of the courts to enforce a valid cause of action (which violates the open courts provision) and a statute that simply changes the common law by eliminating a cause of action that has previously existed at common law or under some prior statute.

The requirement in *Cardinal Glennon,* that plaintiffs comply with the administrative procedure by filing their claim with the Professional Liability Review Board Authority before filing a medical malpractice action was held to be an unconstitutional condition precedent to the use of the courts, whereas the statute in *Harrell* was a valid exercise of legislative discretion to change the substantive law to grant immunity to HMO corporations. The fact that the net effect of the latter statute was to deprive plaintiffs of a cause of action they would otherwise have been entitled to bring does not detract from the right of the legislature to make changes in the substantive law. In the present situation, the legislature saw fit to eliminate any cause of action a plaintiff might have against a designer or builder for personal injuries, wrongful death or property damage incurred more than 10 years after construction is completed. In *Harrell,* this Court stated:

> These cases [including *Cardinal Glennon*] furnish no authority whatsoever for limiting the legislature's authority to design the framework of the substantive law. The right of access means simply the right to pursue in the courts the causes of action the substantive law recognizes.

*Harrell,* 781 S.W.2d at 62. Speaking further for the Court in *Harrell,* Chief Justice Blackmar pointed out that our legislature has frequently enacted statutes granting immunity or otherwise limiting the rights of action that the common law recognized. He referred specifically to § 537.053, RSMo 1986, abrogating dram shop liability and § 188.130, RSMo 1986, the so-called "Wrongful Life Statute" barring any cause of action for negligent failure to abort.

*Strahler v. St. Luke's Hospital,* 706 S.W.2d 7 (Mo. banc 1986), involved a literal and actual barring of the courts to certain minors and, as such, violated the open courts provision. The applicable statute provided that the two year statute of limitations for medical malpractice would run against a minor beginning at age 10, even though the minor was precluded from filing the lawsuit because of his or her incompetency based on age. The Court determined that the possibility that the minor might get an adult to file the lawsuit on the minor's behalf is not sufficient to meet the requirements of the open courts provision of the Missouri Constitution. Again, this is unlike the situation where the legislature simply changes the substantive law to eliminate a cause of action that previously existed.

Insofar as the open courts provision is concerned, the legislature could totally eliminate a cause of action for personal injury or wrongful death arising from improvements to real property against a designer or builder; by the same token the legislature can eliminate such a cause of action from and after 10 years following the completion of construction. Just as the legislature saw fit in *Harrell* to eliminate any cause of action for medical malpractice against an HMO corporation, the legislature can likewise eliminate a cause of action against designers and builders beginning 10 years after the completion of a project. Section 516.097 does not violate article I, § 14, of the Missouri Constitution because it does not bar the courts to a person with a valid cause of action; rather, it modifies the common law to provide that there is no such cause of action.

Finally, plaintiffs contend that § 516.097, RSMo 1986, deprives them of due process of law. Article 1, § 10, of the Missouri Constitution provides: "No person shall be deprived of life, liberty or property without due process of law." Similarly, the fourteenth amendment of the United States Constitution states, "nor shall any state deprive any person of liberty, or property without due process of law...."

■ Plaintiffs point to *Laughlin v. Foregrave*, 432 S.W.2d 308 (Mo. banc 1968), wherein this Court considered whether a two year medical malpractice statute of limitations that begins to run when the injury occurs violates due process because it fails to afford a reasonable time within which to bring the action. Plaintiffs point out that in holding in *Laughlin* that the two year statute of limitations was reasonable and therefore not a violation of due process, the Court acknowledges that a limitation statute can be so short as to be unreasonable. Plaintiffs query if this is so, what could be more unreasonable than the present statute, which cuts off the plaintiffs' cause of action before it arises? Plaintiffs' argument proves too much; it fails to distinguish the basic difference between a statute of limitations and a statute of repose. A statute of limitations allows the cause of action to accrue and then cuts off the claim if suit is not filed within a certain period of time. A statute of repose eliminates the cause of action altogether after a certain period of time following a specified event; in this instance, the completion of construction. More importantly, the cause of action is eliminated before the plaintiffs' injury and thus before plaintiffs' cause of action accrues. If the constitution places a limitation on the legislature that prohibits it from eliminating a potential cause of action before it arises, such a provision would prohibit the legislature from changing the substantive law in any way that adversely affects any potential litigant. It is obvious that neither the United States Constitution nor the Missouri Constitution purports to contain any such limitation.

■ This same concept has been expressed in a different form by the United States Supreme Court, which has stated that a litigant does not have a vested property right in a cause of action before it accrues. Thus, no due process violation occurs if this non-property right is eliminated by a change in the law. The Court, in holding that due process has not prohibited the abolition of causes of action, stated:

Our cases have clearly established that "[a] person has no property, no vested interest, in any rule of the common law." *Second Employers' Liability Cases*, 223 U.S. 1, 50 [32 S.Ct. 169, 175, 56 L.Ed. 327] (1912) *quoting, Munn v. Illinois*, 94 U.S. 113, 134 [24 L.Ed. 77] (1877). The "Constitution does not forbid the creation of new rights, or the abolition of old ones recognized by the common law, to attain a permissible legislative object," *Silver v. Silver*, 280 U.S. 117, 122 [50 S.Ct. 57, 58, 74 L.Ed. 221] (1929), despite the fact that "otherwise settled expectations" may be upset thereby. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 16 [96 S.Ct. 2882, 2892, 49 L.Ed.2d 752] (1976). *See also Arizona Employers' Liability Cases*, 250 U.S. 400, 419–422 [39 S.Ct. 553, 555–556, 63 L.Ed. 1058] (1919). Indeed, statutes limiting liability are relatively commonplace and have consistently been enforced by the courts.

*Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 88 n. 32, 98 S.Ct. 2620, 2638 n. 32, 57 L.Ed.2d 595 (1978).

This portion of our opinion is largely repetitious of our discussion of the open courts provision of the Missouri Constitution, article I, § 14; where we pointed out that § 516.097 does not violate article I, § 14, because it does not bar the courts to a person with a valid cause of action; rather, it modifies the common law to provide that there is no such cause of action. In *Mahoney*, we acknowledged that article I, § 14 (the open courts provision), and article I, § 10 (the due process clause), of the Missouri Constitution are redundant, and we held there, without further discussion, that the denial of due process argument was answered by our response to the challenge based on the open courts provision. *Mahoney*, 807 S.W.2d at 512.

The various plaintiffs argue that the statute is unreasonable and, therefore, violates due process. However, none of these arguments present any contention of substance not otherwise discussed and dealt with in other portions of this opinion, and most essentially boil down to the claim that the legislature was either unwise or unfair,

or both, in adopting § 516.097. In *Harrell*, we had the following to say about similar contentions:

> The general assembly's authority is plenary, except when express constitutional provisions intervene. Statutes are presumed to be constitutional; one claiming otherwise has a heavy burden. The plaintiff has not overcome that presumption. The statute [in this instance granting immunity from medical malpractice claims to HMOs] operates in an area in which the legislature may balance competing interests. Her arguments reduce to the suggestion that the statute is unwise or unfair. This argument must be addressed to the legislature.

*Harrell*, 781 S.W.2d at 63–64. We hold that § 516.097 does not violate the due process clause of either the United States Constitution or the Missouri Constitution. It is understandable that the plaintiffs would disagree with the decision of the legislature to grant immunity to designers and builders from and after 10 years following the completion of construction; however, this Court cannot say that the legislature's decision to do so does not rationally further a legitimate state objective.

■ As a preface to, and interspersed at various points in, plaintiffs' briefs and at oral argument, plaintiffs vigorously assert that the enactment of § 516.097 in Missouri, as well as in most other states, came as a result of concerted and successful lobbying by special interests, and that this fact somehow proves their claim that the statute is unconstitutional. There are at least three more-than-adequate answers to this claim. First, lobbying is an essential and important function in the legislative process. If such efforts could or should be considered by courts as a factor in considering the constitutionality of a statute, few statutes would pass constitutional muster. Second, the right of citizens to petition the legislature in the form of lobbying is one of the most fundamental rights guaranteed by the free speech provision of the first amendment. It would indeed be ironic if the exercise of this fundamental first amendment right should somehow be considered a factor in causing the resulting legislation to be declared unconstitutional under some other provision of the constitution. *Eastern Railroad Presidents Conference v. Noerr–Motor Freight, Inc.*, 365 U.S. 127, 137, 81 S.Ct. 523, 529, 5 L.Ed.2d 464 (1961); *Peters v. Board of Education of the Reorganized School District No. 5 of St. Charles County*, 506 S.W.2d 429, 432 (Mo.1974). The third point is, in part, a prohibition that flows from the first two propositions. Courts absolutely may not look behind the legislature's enactment of a statute to second guess the process by which the legislature arrived at its conclusion. *U.S. v. Des Moines Navigation & Railway Co.*, 142 U.S. 510, 544–45, 12 S.Ct. 308, 317–18, 35 L.Ed. 1099 (1892); *Soon Hing v. Crowley*, 113 U.S. 703, 710–11, 5 S.Ct. 730, 734–35, 28 L.Ed. 1145 (1885); *State ex rel. City of Creve Coeur v. Weinstein*, 329 S.W.2d 399, 406 (Mo.App.1960). The reasons for this rule are both obvious and compelling, not the least of which is that if courts were to do so, it would constitute a most obvious and egregious violation of the separation of powers. Plaintiffs' reliance upon the allegation that this legislation resulted from concerted and successful lobbying is misplaced and without merit. It is not a factor that this Court could, or should, consider in passing upon the constitutionality of § 516.097.

■ Plaintiff Dillman argues that § 516.097 is in conflict with the general statute of limitations (§ 516.120), which allows an action for personal injury to be brought within five years. The obvious answer is that the general statute of limitations actually provides that such a cause of action "can only be brought" within five years. The statute contemplates that a person may only bring a cause of action within the statute of limitations if, in fact, that person has such a cause of action. The general statute of limitations does not purport to limit the legislature's ability to change the substantive law as to what constitutes a valid cause of action. This contention is rejected as being without merit.

Plaintiff Dillman briefed the proposition that the trial court erred by sustaining plaintiff Millstone's Motion To Dismiss on

the basis that Millstone had completed, and the Missouri Highway Department accepted, its work in constructing the highway. This issue is not briefed by defendant Millstone and was apparently abandoned, but, in any event, the Court need not reach this issue. The parties agree that defendant Millstone is within the protection of § 516.097, and our holding that the statute is constitutional provides full support for the trial court granting defendant Millstone's motion.

■ One further issue remains which relates only to defendant SnyderGeneral. Plaintiff's petition alleges in paragraph 2(g) that defendant SnyderGeneral "did in fact manufacture the air handling unit." In its Answer, defendant SnyderGeneral denies this allegation. Although the record in its present state is not clear, the indications are that defendant SnyderGeneral was never involved in the on-site construction since plaintiff alleges that other defendants installed the air handling equipment. Defendant SnyderGeneral contends that because the air handling unit was affixed to the real estate, it qualifies as an "improvement to real property" under § 516.097, and that defendant SnyderGeneral is therefore entitled to the protection of the statute of repose. Plaintiff Blaske claims that the statute, which does not cover materialmen, was not intended by the legislature to cover off-site manufacturers of a pre-built air conditioner.

We disagree with defendant SnyderGeneral that it is necessarily entitled to the benefit of the statute if it manufactured the air handling unit and the air handling unit is an improvement to real estate. We think there is more to the issue and that factual issues not resolved by the present record on the pleadings remain to be determined before it can be decided as a matter of law whether defendant SnyderGeneral is entitled to the benefit of the statute. Summary judgment may not be granted if there is any genuine issue as to any material fact. Rule 74.04(c). The judgment of the trial court sustaining defendant SnyderGeneral's motion for summary judgment is reversed and remanded. Because this is-

sue will likely still have to be determined by the trial court, we will indicate our thinking as to factors to be considered in distinguishing between a materialman who is not entitled to the protection of the statute and a designer or builder who is.

Decisions by courts in other states on similar issues under similar statutes are not altogether helpful because they are, to some extent, inconsistent and have not always articulated the underlying rationale applied in arriving at the result. Defendant SnyderGeneral relies heavily upon *Rodarte v. Carrier Corporation*, 786 S.W.2d 94 (Tex.Ct.App.1990), which held that a defendant who manufactured but did not install a heater-air conditioner unit was entitled to the protection of the statute because the only issue to be considered was whether the item in question was "an improvement to real property." Of course, a large central air handling unit that is affixed to the building or the real property is an improvement to real property. However, we also believe that in deciding this issue a court must concern itself with what the legislature meant by "performing or furnishing ... design, planning or construction ... of the improvement." § 516.097.2, RSMo 1986.

We believe that if the legislature had intended to include within the statute design and production functions that a manufacturer performs in developing and producing a product such as an air handling unit for manufacture and sale generally to the public, it would have used the term "manufacture" in addition to "construction." For example, in *Cinnaminson Township Board of Education v. U.S. Gypsum Company*, 552 F.Supp. 855 (D.N.J.1982), holding that the statute does not protect a manufacturer of acoustical plaster containing asbestos used in the ceilings of schools, the New Jersey court relied upon quotations from *Wayne Township Board of Education v. Strand Century, Inc.*, 172 N.J.Super. 296, 302, 411 A.2d 1161, 1164 (1980), where it was pointed out that "the statute 'was not intended to benefit manufacturers and sellers of products who were uninvolved in the design, planning and construction of improve-

ments to real estate. Product design alone is not enough to trigger the applicability' of the statute." *Cinnaminson,* 552 F.Supp. at 862. *Wayne Township* involved a dimmer panel used in a school auditorium. That court concluded "that if the defendant had 'merely sold a stock or shelf item out of its regular inventory or fabricated a product as designed and specified by the electrical engineer or the electrical contractor for this project it is not within the [statute of] repose....'" *Id.*

*Howell v. Burk,* 90 N.M. 688, 568 P.2d 214, involved injury to a plaintiff who collided with a glass door on the observation deck of an airport terminal. In considering the application of the statute of repose to a defendant who manufactured, designed, sold and installed the glass, the New Mexico court stated:

> [A] materialman who does no more than manufacture or supply materials does not benefit from the statute. The statute, however, applies to "any person performing or furnishing the construction or the design ... of construction." .... To the extent that PPG [defendant] is sued as manufacturer or seller of the glass, PPG is not covered by the statute and the summary judgment in favor of PPG as to these claims was error. To the extent that PPG is sued as the designer or installer of the glass, PPG is covered by the statute and the summary judgment in its favor was correct.

....

*The statutory language requires an activity analysis.* [Emphasis added.]

*Howell,* 90 N.M. at 697, 568 P.2d at 223. By the same token, the present case requires an "activity analysis" to properly determine defendant SnyderGeneral's status under the statute of repose.

The following factors should be considered in deciding whether a manufacturer such as SnyderGeneral is included within the protection of the statute. Such a manufacturer may make one or both of two separate and distinct arguments in support of its claim that it is covered by the statute. First, a manufacturer may claim that its activity in fabricating, assembling or manufacturing building materials or a component part incorporated within the real property in the construction of the improvement "is, performing or furnishing, ... construction, including ... construction services, of the improvement." § 516.-097.2. We conclude that manufacture at the manufacturer's factory or production site of a standard product available generally to the public that is manufactured and furnished for inclusion in the improvement by the persons constructing the improvement under circumstances where the manufacturer has no substantial on-site construction activity is not within the protection of the statute. On the other hand, substantial participation at the construction site in significant activities in installing or incorporating the product into the real property would constitute "performing or furnishing ... construction, including ... construction services, ..." and is covered under the statute. In this respect we do not distinguish between the manufacture and sale of a complete component part, such as an air conditioner or an elevator, and a component part of a complete component part, such as a thermostat on an air conditioner or a motor on an elevator. *See Reddix v. Eaton Corp.,* 662 S.W.2d 720 (Tex.App. 4 Dist.1983), (holding that the manufacturer of an electric hoist, which was a component part of an outdoor elevator, and the manufacturer of a link chain used in the hoist were both materialmen not covered by the statute). By the same token, a manufacturer of materials used in the construction, such as a fabricator of reinforcement rods, or a lumber mill that produces 2×4s or plywood from raw timber, who is not substantially involved in the on-site construction activity, is not within the protection of the statute.

However, if the products fabricated and sold for use in the improvement to real estate are custom made for that project, as opposed to being generally manufactured or fabricated for sale to the general public, production of the custom made product at a location away from the construction site will not necessarily defeat

coverage under the statute. For example, a carpenter who constructs and installs custom made cabinets particularly sized and designed for a certain building will be covered under the statute even though the carpenter builds the cabinets in the cabinet shop away from the construction site and then takes the completed cabinets to the construction site and installs them. We would draw the line between fabrication, production or manufacturing a product generally for the public that happens to be used in constructing an improvement to real estate (which will not be treated as "construction" under the statute) and the production or construction of a custom made item particularly designed and constructed for the project. Substantial on-site construction activity is an important factor for coming within the protection of the statute.

■■■ The second contention a manufacturer such as defendant SnyderGeneral may make to gain the protection of the statute is to argue that it performed or furnished design, planning or engineering devices by reason of the design and engineering activities involved in developing its product. We are of the view that the design efforts and engineering on the product such as the air handling unit manufactured by defendant SnyderGeneral, which are directed toward designing and planning a product generally available to the public as opposed to the planning and designing of a custom designed product intended to meet the special needs of a particular construction, do not qualify as "performing or furnishing, ... the design [or] planning ..., including architectural [or] engineering ... services,...." § 516.097.2. Thus, if SnyderGeneral furnished to the general contractors of this project an air handling unit from its regular line of products as specified by the architects or engineers of that project, the engineering that defendant SnyderGeneral performed in connection with developing and manufacturing the air handling unit to make it available as a part of its general line of air conditioners available to the public is not the type of design activity protected by the statute. However, design and engineering activities spe-cifically undertaken to design or engineer a special air handling unit unique to this building would be within the statute.

The courts will undoubtedly need to develop further details, on a case by case basis, for distinguishing between materialmen who are not within the protection of the statute and architects, engineers and builders who are. However, we believe the guidelines we have described are a sufficient starting place to make these distinctions and to aid the trial court in deciding whether defendant SnyderGeneral is covered by the statute.

These limitations on the inclusion of a manufacturer of products within the statute are fully consistent with our analysis of the equal protection attack on the constitutionality of the statute discussed earlier in this opinion. In that analysis, we have described as a possible rational basis for including designers and builders within the protection of the statute while excluding materialmen, the proposition that materialmen have a better opportunity for quality control because they normally mass produce their product in the controlled environment of their factory or other production facility. Also, we pointed out that the design and engineering of a mass-produced product is likely to be of superior quality to the planning and engineering of improvements to real property, which generally vary from project to project. This supports the legislative judgment to distinguish between materialmen on the one hand and designers and builders of improvements to real estate on the other.

■■■ If SnyderGeneral's interpretation of the statute were to prevail, this rationale for excluding materialmen from the protection of the statute could fail and the statute well might violate both equal protection and the special legislation provisions of the Missouri Constitution unless a different rational basis argument were to be developed. It is a well accepted canon of statutory construction that if one interpretation of a statute results in the statute being constitutional while another interpretation would cause it to be unconstitutional,

the constitutional interpretation is presumed to have been intended. *Rust v. Sullivan,* — U.S. —, 111 S.Ct. 1759, 1788, 114 L.Ed.2d 233 (1991) (O'Connor, J., dissenting) (*quoting Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council,* 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988); *State v. Burnau,* 642 S.W.2d 621, 623 (Mo. banc 1982). It will be for the trial court to determine, pursuant to the principles discussed herein, if and when the record is sufficient, whether defendant SnyderGeneral is entitled to protection under § 516.097.

The trial courts' judgments are affirmed in all respects other than with respect to SnyderGeneral's Motion For Summary Judgment, which is reversed and remanded.

ROBERTSON, C.J., and RENDLEN, COVINGTON, and BENTON, JJ., concur.

BLACKMAR, J., concurs in separate opinion filed.

HOLSTEIN, J., not participating.

BLACKMAR, Judge, concurring.

I concur in the principal opinion.

The principal opinion distinguishes *State ex rel. Cardinal Glennon Mem. Hosp. v. Gaertner,* 583 S.W.2d 107 (Mo. banc 1979), and *Strahler v. St. Luke's Hospital,* 706 S.W.2d 7 (Mo. banc 1986). I believe that both of those holdings are infirm. *Cardinal Glennon* was decided before I joined the Court. I thought at the time that it unduly circumscribed the discretion of the legislature, which imposed only a modest delaying procedure. Its force has been considerably weakened by *Harrell v. Total Health Care, Inc.,* 781 S.W.2d 58 (Mo. banc 1989), and *Mahoney v. Doerhoff Surgical Services,* 807 S.W.2d 503 (Mo. banc 1991).

*Strahler* shares *Cardinal Glennon's* infirmities because it was a 4 to 3 decision in which one member of the Court indicated his concurrence only on the authority of *Cardinal Glennon. Strahler,* 706 S.W.2d at 12 (Robertson, J., concurring). I would reexamine both of these holdings, if an appropriate case were presented. I agree

that they do not inhibit the present decision.

The principal opinion appropriately speaks of the proper relationship between the legislative branch and the judicial branch. We must take the legislature's handiwork as it frames it. I consider it quite improper for counsel to ask us to do otherwise or to make reference to the motivation of the legislature.

Although the plaintiffs' claim regarding the precise problems of the air conditioner, and how it contributed to the injury, are fragmentary, I believe that the petition may be minimally sufficient to state a claim or, at least, that it may be amended so that it is sufficient. So I concur in the reversal and remand as to SnyderGeneral.

I do not believe that the next to last paragraph of the principal opinion is necessary to the holding and have reservations about it.

With these observations, I concur.