JoAnn WHEELER, Conservator of
the Estate of Derrel Wheeler,
Incapacitated, Appellant,

v.

Thomas B. BRIGGS, M.D.,
et al., Respondents.

No. 79076.

Supreme Court of Missouri,
En Banc.

March 25, 1997.

Robert W. Freeman, Springfield, for Appellant.

Gail L. Fredrick, Bruce E. Hunt, Jeffrey S. Monroe, Springfield, for Respondent.

LIMBAUGH, Judge.

This case is a challenge to the constitutionality of § 516.170, RSMo 1994, which tolls the statute of limitations for individuals who are minors or who are mentally incapacitated, to the extent that the statute excepts from its tolling provisions actions for medical malpractice.

Plaintiff JoAnn Wheeler (Conservator), as conservator of the estate of Derrel Wheeler, filed this case against Dr. Thomas Briggs; his employer, Southwest Missouri Neurosurgical Group, Inc. (SMNG); Dr. Douglas Hacker; and his employer, Springfield Radiological Group, Inc. (SRG), alleging they were negligent in their treatment of Derrel Wheeler. The trial court dismissed plaintiff's petition on the ground that it was barred by the two-year statute of limitations for medical malpractice actions under § 516.105, RSMo 1994. Jurisdiction on appeal to this Court is based on article V, § 3 of the Missouri Constitution. The judgment is affirmed.

According to the petition, on June 9, 1988, Derrel Wheeler suffered a stroke that was not diagnosed as such until June 13, 1988. He then suffered a "major" stroke during the course of a "four vessel angiogram" ordered by Dr. Briggs on June 13, 1988, and performed by Dr. Hacker on June 14, 1988. As a result of the strokes, on August 6, 1991, Derrel Wheeler was declared mentally incompetent and disabled by the probate division of the Lawrence County Circuit Court and JoAnn Wheeler, his wife, was appointed guardian of his person and conservator of his estate. On May 11, 1992, JoAnn Wheeler, acting as her husband's conservator, filed a medical malpractice action concerning the initial medical treatment Derrel received, although none of the four current defendants was named as a party in that action. Dr. Briggs was added as a party to the 1992 petition on May 5, 1993. The Conservator voluntarily dismissed that petition without prejudice on May 18, 1995, and refiled a petition on August 3, 1995, against Dr. Briggs and Dr. Hacker. In an amended petition filed January 10, 1996, she also named SMNG and SRG as defendants. In the first count of the amended petition the Conservator sought a declaratory judgment that § 516.170 is unconstitutional to the extent that it bars Derrel's action against any of the defendants. Count II of the petition stated claims for medical malpractice against Dr. Briggs, SMNG, Dr. Hacker, and SRG.

In response to the Conservator's petition, now pending, defendants Dr. Briggs and SMNG filed a motion to dismiss and defendants Dr. Hacker and SRG filed a motion for summary judgment, with both motions asserting that the action was time barred by the two-year statute of limitations for medical malpractice actions in § 516.105. In addition, the Conservator filed a motion for

summary judgment on Count I of her petition. The trial court sustained the defendants' motions, overruled the Conservator's motion, and dismissed the Conservator's petition in its entirety.

On appeal, the Conservator argues that the trial court erred in sustaining the defendants' motions and denying her motion, because § 516.170 violates the open courts provision of the Missouri Constitution, the equal protection and due process requirements of the United States and Missouri Constitutions, and the special law prohibition in article III, § 40(6), of the Missouri Constitution. Only the open courts issue deserves extended analysis, as the remaining constitutional arguments are wholly without merit. Just last year this Court held in *Batek v. Curators of University of Missouri*, 920 S.W.2d 895, 898–99 (Mo. banc 1996), that the exemption of medical malpractice actions from the tolling provisions of § 516.170 is not an equal protection violation, because it neither burdens a suspect class nor a fundamental right and the classification is reasonably related to a legitimate state interest. In *Batek*, this Court also held that § 516.170 does not violate the special law prohibition of the Missouri Constitution. *Id.* at 899. The Conservator offers no supporting argument on the alleged due process violation and asserts it only in connection with the claimed equal protection violation. We turn, therefore, to the open courts issue.

■ The record shows that the Conservator's medical malpractice action was first brought nearly four years after the alleged negligent acts. Section 516.105 would ordinarily bar the action because it provides a two-year statute of limitations for medical malpractice actions, as measured from the time of the alleged negligent acts in June of 1988. The Conservator claims, though, that Derrel Wheeler has been mentally disabled since that time and should be allowed to rely on the tolling provisions of § 516.170, despite the proviso that the section does not apply to medical malpractice actions. Section 516.170 states:

Except as provided in section 516.105, if any person entitled to bring an action ... at the time the cause of action accrued be either within the age of twenty-one years, or mentally incapacitated, such person shall be at liberty to bring such action within the respective [statute of limitations] after such disability is removed. (Emphasis added.)

■ The Conservator takes the position that to except the provisions of § 516.105 from the coverage of § 516.170 violates the mandate of Mo. Const. art. I, § 14, which guarantees "[t]hat the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay." Her specific challenge is the constitutionality of applying § 516.170 to the mentally disabled, medical malpractice plaintiff. In analyzing the constitutional challenge, however, we begin with the recognition that the legislature has the right to modify the substantive law to eliminate or restrict causes of action. *See Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 832 (Mo. banc 1991); *Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898, 905 (Mo. banc), *cert. denied*, 506 U.S. 991, 113 S.Ct. 511, 121 L.Ed.2d 446 (1992).

■ The constitutional right of access means simply the "right to pursue in the courts the causes of action the substantive law recognizes." *Adams*, 832 S.W.2d at 906; *Harrell v. Total Health Care Inc.*, 781 S.W.2d 58, 62 (Mo. banc 1989). "It does not assure that a substantive cause of action once recognized in the common law will remain immune from legislative or judicial limitation or elimination." *Adams*, 832 S.W.2d at 906. Under the open courts provision, only those statutes that impose procedural bars to access of the courts are unconstitutional. *Id.* at 905. In *Strahler v. St. Luke's Hospital*, 706 S.W.2d 7 (Mo. banc 1986), relied on by plaintiff, this Court held that § 516.105, the same statute involved in the case at hand, denied access to the courts and was constitutionally infirm to the extent that it precluded the claim of a 19–year–old woman for medical malpractice that occurred when she was a 15–year–old minor. The overriding factor in that determination was that minors lack the legal capacity to file suit under § 507.115,

RSMo 1994, which provides that only persons of age 18 years or over are entitled to bring civil suits in their own names. Section 507.115, in conjunction with § 516.105, is a legal impediment to access to the courts created by the legislature. *Strahler* did not turn on any personal or peculiar inability of the individual claimant to bring suit, but rather a state-imposed barrier to bringing suit.

In this case, the distinction is critical. Mentally incapacitated persons, unlike minors, are not legally prohibited from filing suit. They have the right to pursue in the courts any cause of action the substantive law recognizes. Instead, it is their own disability that prevents, as a practical matter, meaningful access to the courts. The legislature, in recognition of this practical inability to bring suit, included mentally incapacitated persons in the tolling provisions of § 516.170, but then excepted those persons from the tolling benefit in medical malpractice cases. Section 516.170 does not procedurally bar access to the mentally incapacitated. The exception may, in some cases, yield harsh results, but it is, nevertheless, a legitimate legislative prerogative.

We hold, therefore, that § 516.170 does not impede a mentally incapacitated person's access to the courts and that the trial court committed no error in sustaining defendants' motions to dismiss and for summary judgment and in overruling the conservator's motion for summary judgment. The judgment is affirmed.

BENTON, ROBERTSON, and COVINGTON, JJ., concur.

HOLSTEIN, C.J., dissents in part and concurs in part in separate opinion filed.

PRICE and WHITE, JJ., concur in opinion of HOLSTEIN, C.J.

HOLSTEIN, Chief Justice, dissenting in part and concurring in part.

Among the provisions found in Missouri's "Bill of Rights" is the following:

That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay.

*Mo. Const. art. I, § 14.* I see no reason to resort to any strained construction of the above language or engage in any distillation or dilution of its words. It should mean what it says. The aim of article I, § 14 is to allow all citizens to enforce rights recognized by the law, without discrimination. *Schulte v. Missionaries of La Salette Corp. of Missouri,* 352 S.W.2d 636, 641 (Mo.1961). Article I, § 14 prohibits any law that arbitrarily or unreasonably bars individuals or classes of individuals from accessing our courts in order to enforce recognized causes of action for personal injury. The principal opinion's analysis renders an important constitutional right meaningless. For that reason, I dissent from the principal opinion's rationale although I concur, in part, with its result.

I.

Allegedly, as a result of the negligence of defendant medical care providers in recommending and performing an angiogram on June 14, 1988, Derrel Wheeler suffered a major stroke, which rendered him mentally incompetent. Over three years later, on August 6, 1991, Derrel Wheeler was declared mentally incompetent by the probate court in Lawrence County. Joann Wheeler, his wife, was appointed guardian of the person and conservator of his estate. According to the majority opinion announced today, the statute of limitations contained in § 516.105 began to run against Mr. Wheeler's claim at the time of the allegedly negligent act, notwithstanding his mental incompetence and lack of guardianship, and would bar any medical malpractice action brought by the conservator because the two-year limitations period had run by the time of her appointment.

In so holding, the Court relies on inapposite cases, misconstrues precedent and announces a new, strained construction of article I, § 14. The Court creates an unfounded dichotomy between those statutes that impose a legal barrier to court access and those statutes that result in an actual barrier to court access.

The principal opinion's references to *Adams v. Children's Mercy Hospital*, 832 S.W.2d 898 (Mo. banc 1992), *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822 (Mo. banc 1991), and *Harrell v. Total Health Care, Inc.*, 781 S.W.2d 58 (Mo. banc 1989), are puzzling. In each of those cases, the Court held that the legislature could change the substantive common law so as to eliminate or modify a cause of action before it accrued. That is not the issue involved here. None of the cases can be read as authorizing the erection of an arbitrary and unreasonable barrier to bringing a recognized cause of action. Indeed, in *Adams*, the Court made a distinction between procedural barriers, which violate article I, § 14, and changes in the substantive law, which do not violate the constitution. 832 S.W.2d at 905–06. In *Blaske*, the Court distinguished from its holding cases which involved "a literal and actual barring of the courts to certain" litigants. 821 S.W.2d at 833. Similarly, in *Harrell*, the Court excepted from its holding cases challenging the running of a statute of limitations against persons presumably incapable of pursuing their legal rights. 781 S.W.2d at 61. To the extent these cases are applicable, they do not support the principal opinion's conclusion.

One case that is apposite, *Strahler v. St. Luke's Hospital*, 706 S.W.2d 7 (Mo. banc 1986), is misconstrued by the majority. There, the Court struck down the statutory limitation period of § 516.105 as applied to minors on the ground that it violated their constitutional right to access the courts:

> The statutory limitation period, as applied to minors, violates their right of access to our courts under Mo. Const. art. I, § 14 and renders vacant the guarantee contained in this constitutional provision which declares in no uncertain terms "that the courts of justice shall be open to every person, and certain remedy afforded for every injury to person. . . ." To the extent it deprives minor medical malpractice claimants the right to assert their own claims individually, makes them dependent on the action of others to assert their claims, and works a forfeiture of those claims if not asserted within two years, the provisions of § 516.105 are too severe and interference with the minors' state consti-

tutionally enumerated right of access to the courts to be justified by the state's interest in remedying a perceived medical malpractice crisis.

> . . . .

> Section 516.105, RSMo 1978, arbitrarily and unreasonably denies [minors] a set of rights without providing an adequate substitute course of action for them to follow. We consider § 516.105, RSMo 1978, as it pertains to minors, a statutory aberration which runs afoul of our state constitution and we accordingly hold it constitutionally infirm.

706 S.W.2d at 11–12.

Here, the principal opinion incorrectly determines that "*Strahler* did not turn on any personal or peculiar inability of the individual claimant to bring suit, but rather on a state-imposed barrier to bring suit." If the principal opinion is correct in asserting that the statutory barrier to minors filing suit found in §§ 507.110–.120 was "the overriding factor" to the *Strahler* decision, it is odd that the Court in *Strahler* did not say so and hold those provisions to be unconstitutional barriers to access. Rather, the Court held that the statute of limitations in § 506.105 was a violation of a child's rights under article I, § 14.

The *Strahler* plurality specifically rejected the defendant's argument that § 516.105 does not contravene article I, § 14, because plaintiff, who was over fifteen years of age at the time of the alleged malpractice, could have recruited a next friend to bring the suit. *See* § 507.130, RSMo 1994 (permitting a fourteen-year-old to petition for appointment of his or her own next friend). The opinion in *Strahler* emphasized that a minor child lacks the understanding and wherewithal necessary to prompt others to take legal action on the child's behalf:

> We think defendant's contention that plaintiff should not now be heard to complain because she was free to "initiate her own suit" plainly ignores the disabilities and limitations that childhood, familial relationships, and our legal system place upon a minor of tender years—who has

little if any understanding of the complexities of our legal system. 706 S.W.2d at 10. Critical to the decision there was the Court's determination that the minor's ability under state law to have a next friend appointed to bring suit on the child's behalf did not provide meaningful access to the courts because the law made minors dependent upon the actions of others to assert their rights. *Id.* at 10–12.

The dissenting opinion of Judge Welliver in *Strahler* sheds additional light on the history of the open courts provision and his view of the role of the court in determining whether a statute violates the provisions of article I, § 14. While he was no friend of vague notions of "substantive" due process, he made clear his belief that article I, § 14 is in the nature of a specific "due process" clause that requires judicial review of statutes charged with violating its provisions. There, Judge Welliver said:

> While the initial question of reasonableness is up to the legislature, it is still the province of the courts to determine if the challenged restriction is arbitrary and unreasonable and thereby denies a litigant due process.

*Id.* at 18 (Welliver, J., dissenting). Judge Welliver concluded that because parents and guardians could bring the suit and are presumed to look after the child's best interests, that was sufficient to satisfy the requirement that there be a "certain remedy afforded" for a legal wrong. *Id.* at 19. Likewise, Judge Blackmar and Judge Donnelly, in their dissenting opinions, indicated that a "reasonableness" analysis was appropriate. *Id.* at 13 (Blackmar, J., dissenting); *Id.* at 14–15 (Donnelly, J., dissenting).

An application of the rationale of *Strahler,* whether one relies on the principal opinion or on the dissenting opinions, to the facts of the present case clearly leads to the conclusion that this Court should strike down §§ 516.105 and 516.170 to the extent they allow a limitation period to run against a mentally incompetent medical malpractice victim not represented by a court-appointed conservator. If it is wholly unreasonable and arbitrary to bar an action by one who lacks capacity due to minority, particularly when

the minor is both mentally and physically capable of applying for his or her own appointment of a next friend, it is equally arbitrary and unreasonable to bar a recognized legal action due to mental incompetency.

The majority rests its decision on an insignificant and incorrect distinction that, unlike minors, mentally incapacitated persons, though admittedly incapable of initiating a legal action, are not specifically prohibited by statute from bringing an action on their own behalf. The principal opinion provides no explanation for how any meaningful access to courts in medical malpractice cases is provided by merely the technical legal ability of a mentally incapacitated person, who may very well be suffering from the last stages of Alzheimer's Disease, be profoundly retarded, or even in a persistent vegetative state, to prosecute an action on his or her own behalf.

I conclude that article I, § 14 of the Missouri Constitution bars the running of the two-year statute of limitations on medical malpractice actions against a mentally incapacitated plaintiff for whom no conservator or guardian has been appointed as it unreasonably and arbitrarily deprives such persons of any meaningful access to courts and effectively denies them a "certain remedy" for a legally recognized cause of action.

## II.

This conclusion, however, is not dispositive because the effect of appointment of a conservator, a matter that was not raised in *Strahler,* must be considered. A conservator is "one appointed by a court to have the care and custody of the estate of a minor or disabled person." *§ 475.010(3), RSMo 1994.* A conservator is under a duty to act in the interest of the disabled person. *§ 475.130.1, RSMo 1994.* In that regard, the "conservator of the estate shall prosecute and defend all actions instituted on behalf of or against the protectee[.]" *§ 475.130.4.* Read together, these statutory provisions give a conservator not only the authority, but the duty to prosecute actions on behalf of the protectee, including the duty to file a lawsuit when the protectee is the victim of intentional or negligent malpractice by a healthcare provider.

The impediment faced by a mentally incapacitated person represented by a conservator is not unreasonable when balanced against the state's interest in providing a statute of limitations to protect medical care providers from tort liability based on stale evidence and to provide them with a period of repose after which they can rest easy with the comfort that they can no longer be sued. The protectee of a conservator is not dependent upon the moral obligation of another to protect his or her rights, but is represented by someone who is legally obligated to protect those rights. In short, when a conservator is appointed, the mentally incapacitated person is given sufficient access to the courts, allowing the statute of limitations to run. Under the majority's analysis, a malpracticing healthcare provider who sometimes is the best or only person in a position to know whether the patient is incapacitated is actually rewarded for discouraging appointment of a conservator who would be legally obligated to look after the patient's interests.

### III.

Today's opinion is an unfounded departure from this Court's prior decisions that provide a clear constitutional right to access to courts and to a "certain remedy" for recognized legal wrongs. The principal opinion disregards precedent by refusing to subject the statutes to any reasonableness analysis. The majority concedes its result is harsh, but looks to the legislature to repair the damage. However, history and the constitution teach that it is the courts which must be vigilant to protect the individual rights of those who are least capable of taking care of themselves. I include in that group not only children, as this Court recognized in *Strahler,* but also retarded and other mentally disabled adults who have been the victims of medical malpractice.