Maria KILMER, Individually and as Next Friend of Sara L. Kilmer, Teresa Kilmer and Diana Kilmer, Appellants,

v.

Hui Chan MUN, Defendant,

Stefanina's Pizzaria & Restaurant, Inc., Respondent.

No. SC 81853.

Supreme Court of Missouri, En Banc.

May 9, 2000.

Rehearing Denied June 13, 2000.

James G. Krispin, Clayton, for appellants.

T. Michael Ward, Russell F. Watters, Amy L. Klingemann, Robert J. Wulff, St. Louis, for respondent.

MICHAEL A. WOLFF, Judge.

The widow and children of Thomas Kilmer brought this wrongful death action against Hui Chan Mun, the driver whose car collided with Kilmer's on the wrong side of a divided highway, and against Stefanina's, the restaurant that served beer to Hui Chan Mun after he allegedly was obviously intoxicated. The Kilmers' "dram shop" claim against the restaurant is based on section 537.053.3 [1], which authorizes a cause of action against a liquor licensee where the sale of alcoholic beverages to an obviously intoxicated person is the proximate cause of injury or death.

1. All statutory references are to RSMo 1994, unless otherwise indicated.

However, section 537.053.3 only authorizes a claim where the liquor licensee has been convicted or has received a suspended imposition of sentence for violating section 311.310 by providing liquor to an intoxicated person. Because the prosecuting attorney declined to charge Stefanina's, the trial court granted the restaurant's motion for summary judgment. The judge designated the summary judgment in favor of Stefanina's as final for purposes of appeal.

The Kilmers appealed to this Court challenging the constitutionality of the statutory restriction that requires a conviction in order to maintain a claim under section 537.073.3. We have jurisdiction. Mo. CONST. art. V, sec. 3.

We hold that the statutory restriction violates the "open courts" provision of the Missouri Constitution's Bill of Rights, article I, section 14, which protects the Kilmers' right to pursue a remedy for a legally recognized injury. We reverse and remand for further proceedings consistent with this opinion.

### Facts [2]

The Kilmers allege that Hui Chan Mun had pitchers of beer at Stefanina's Pizzeria and Restaurant, an establishment licensed to sell intoxicating liquor, between approximately 10:00 p.m. and midnight on February 26, 1998. Hui Chan Mun then allegedly drove his car on the wrong side of the divided U.S. Highway 40. He collided with a car driven by Thomas Kilmer, who died at the scene of the accident.

Hui Chan Mun was subsequently convicted of involuntary manslaughter. Evidence at Hui Chan Mun's criminal trial was that his blood alcohol content at the hospital two hours after the collision was .13% per weight by volume. The Kilmers filed an affidavit of Dr. Mary Case, the pathologist who testified at the criminal trial. Dr. Case opined that Hui Chan Mun's blood alcohol content would have been .136%-.142% prior to being served his last drink before the collision and .112%-.118% prior to being served his second-last drink prior to the collision. At these levels, Hui Chan Mun would have exhibited outward signs of intoxication including diminished judgment, decreased inhibitions, impaired perception, memory and comprehension.

Kilmer's family asked the St. Charles County prosecuting attorney to charge Stefanina's with violating section 311.310 [3] which makes it a misdemeanor to serve alcohol to "any person intoxicated or appearing to be in a state of intoxication" by an establishment that is licensed to sell liquor by the drink. Family members requested a criminal charge because they wanted to bring a civil action against Ste-

---

**2.** The facts are summarized from the pleadings, affidavits and other evidence that were before the trial court on Stefanina's motion for summary judgment. For the purpose of this opinion, we assume the facts to be true, though all facts are subject to proof at trial.

**3.** The criminal statute, section 311.310, which gives rise to the civil cause of action in section 537.053, provides:

Any licensee under this chapter, or his employee, who shall sell, vend, give away or otherwise supply any intoxicating liquor in any quantity whatsoever to any person under the age of twenty-one years, or to any person intoxicated or appearing to be in a state of intoxication, or to a habitual drunkard, and any person whomsoever except his parent or guardian who shall procure for, sell, give away or otherwise supply intoxicating liquor to any person under the age of twenty-one years, or to any intoxicated person or any person appearing to be in a state of intoxication, or to a habitual drunkard, shall be deemed guilty of a misdemeanor, except that this section shall not apply to the supplying of intoxicating liquor to a person under the age of twenty-one years for medical purposes only, or to the administering of such intoxicating liquor to any person by a duly licensed physician. No person shall be denied a license or renewal of a license issued under this chapter solely due to a conviction for unlawful sale or supply to a minor when serving in the capacity as an employee of a licensed establishment.

fanina's under section 537.053.[4] Without a conviction or suspended imposition of sentence of Stefanina's under section 311.310, an action for damages is barred by section 537.053. The prosecutor declined to charge Stefanina's.

The Kilmers' wrongful death lawsuit includes a claim against Stefanina's alleging that Kilmer's death was the result of Stefanina's serving alcohol to a patron who was obviously intoxicated. The trial court granted Stefanina's Motion for Summary Judgment because section 537.053 bars civil dram shop actions absent a conviction pursuant to section 311.310.

## The Origin of the "Open Courts" Provision

The Missouri Constitution's Bill of Rights, article I, section 14, provides: "That the courts of justice shall be open to every person, and certain remedy afforded for every injury to person, property or character, and that right and justice shall be administered without sale, denial or delay."

This case presents the question of whether this "open courts" provision states a constitutional right or merely states an ideal to which our system aspires.

An "open courts" provision has been in our state constitution since the first Missouri Constitution of 1820. Its origins are in *Magna Carta*, a document that evolved as the basic charter of English liberty after its original version was signed and sealed by King John of England in 1215.[5]

The original language of *Magna Carta* – "To none will we sell, to none will we deny, delay, right or justice" [6] – reflected the concern that the courts of the era had fallen into disrepute for selling writs.[7] In Lord Coke's commentary on *Magna Carta*, the text quoted here underwent a "radical change" and was available to American constitutional drafters in a form close to the version now in the Missouri Constitution: "[E]very Subject of this Realm, for injury done to him in [goods, land or person], ... may take his remedy by the course of the Law, and have justice and right for the injury done him, freely without sale, fully without any denial, and speedily without delay." [8]

4. The full text of section 537.053 is as follows:

    1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933–34, extra session, page 77), it has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

    2. The legislature hereby declares that this section shall be interpreted so that the holdings in cases such as *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App.1983); *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo.App.1980); and *Nesbitt v. Westport Square, Ltd.*, 624 S.W.2d 519 (Mo.App. 1981) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

    3. Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death

against any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person.

5. *See State ex rel. Cardinal Glennon Memorial Hospital for Children v. Gaertner*, 583 S.W.2d 107, 110 (Mo. banc 1979); *DeMay v. Liberty Foundry Co.*, 327 Mo. 495, 37 S.W.2d 640 (1931).

.6. This is paragraph 40 of *Magna Carta or The Great Charter of King John* as published in Vernon's Mo. ANN. STAT. vol. 1 (1970).

7. David Schuman, *The Right to a Remedy*, 65 TEMP. L. REV. 1197, 1199 (1992).

8. Schuman, *supra* note 7, at 1199, n. 14 and accompanying text.

It may be argued that the original *Magna Carta* language was directed only to courts.[9] However, in the 19th century, when our first constitution was adopted, "the evil was renegade legislatures that had, for example, deprived injured creditors of their judicial remedies against debtors by passing legislation impairing existing contractual obligations."[10] In Missouri, barriers to a "certain remedy" for an "injury" can be erected by the courts themselves, or by the legislature.[11] An examination both of the history and the language of our constitution supports the conclusion that article I, section 14, "applies against all impediments to fair judicial process, be they legislative or judicial in origin."[12]

Missouri's version of the "open courts" provision has been strengthened twice since its adoption in our state's first constitution of 1820. Missouri's first constitution put the "open courts" provision in our Bill of Rights, which provided: "That courts of justice *ought to be* open to every person, and certain remedy afforded for every injury to person, property, or character; and that right and justice *ought to be* administered without sale, denial, or delay.... "Mo. CONST. art. XIII, sec. 7 (1820) (emphasis added.) In the constitution of 1875, the provision reads: "That courts of justice *shall be* open to every person, and certain remedy afforded for every injury to person, property or character; and that right and justice *should be* administered without sale, or delay." Mo. CONST. art. II, sec. 10 (1875) (emphasis added). This version was added by amendment in the Constitutional Convention, but without elaboration as to any change in meaning. *See* DEBATES, MISSOURI

CONSTITUTIONAL CONVENTION 1875, vol. II, 226–27. In the constitution of 1945, the word "should" was changed to "shall." *See* Mo. CONST. art. I, sec. 14 (1945) quoted above. One might question whether these changes reflect a change in meaning or merely reflect contemporary linguistic conventions. But when the words "ought" and "should" are replaced with the word "shall" it is difficult to escape the conclusion that our drafters changed a passage that could originally have been taken to be mere exhortation to a constitutional provision that is mandatory in tone and substance.

### The "Open Courts" Provision and Our Cases

In the past 25 years, the legislature has enacted various provisions affecting claims, remedies and procedures for injured persons who seek redress in court. The challenges based in whole or in part on article I, section 14 have resulted in at least nine decisions whose principal, concurring and dissenting opinions offer a variety of analytical approaches for applying this "open courts" principle. Some of these cases seem irreconcilable.[13]

These modern era cases start with *State ex rel. Cardinal Glennon Memorial Hosp. for Children v. Gaertner*, 583 S.W.2d 107 (Mo. banc 1979), where this Court invalidated a requirement that a medical malpractice plaintiff submit his or her claim to a professional liability board for a recommendation prior to filing a lawsuit in court. Even though the procedure invalidated in *Cardinal Glennon* did not ultimately deny access to the court, the procedural hurdle was held to be enough to violate article I,

---

9. *See, e.g., Meech v. Hillhaven West Inc.*, 238 Mont. 21, 776 P.2d 488 (1989).

10. Schuman, *supra*, note 7, at 1201.

11. Mo. CONST. art. V, sec.3, gives the legislature some power with regard to matters of pleading, practice and procedure.

12. Schuman, *supra* note 7, at 1203.

13. Missouri is not alone in this regard. An Oregon concurring opinion, interpreting Oregon's version of the "open courts" provision, notes that the Oregon Supreme Court "has written many individually tenable but inconsistent opinions" about the provision. *Hale v. Port of Portland*, 308 Or. 508, 783 P.2d 506, 518 (1989) (Linde, J., concurring).

section 14. A brief review of the cases since *Cardinal Glennon* will illustrate some of the inconsistencies.[14]

*Schumer v. City of Perryville*, 667 S.W.2d 414 (Mo. banc 1984), invalidated the requirement, as applied to a minor who was legally incapable of bringing his own action, of giving notice of his claim before suing a municipality. Similarly, *Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7 (Mo. banc 1986), held that the statute of limitations for actions against health care providers, as applied to minors, violated the "open courts" provision because it cut off a minor's claim before the minor was able to bring suit on his own behalf. In *Simpson v. Kilcher*, 749 S.W.2d 386 (Mo. banc 1988), this Court upheld the dram shop statute at issue in this case, which requires conviction of a liquor licensee as a pre-condition of bringing suit against a licensee. *Harrell v. Total Health Care, Inc.*, 781 S.W.2d 58 (Mo. banc 1989), upheld a statute that exempted health service corporations from liability for injuries to patients based on the corporation's negligent selection of a surgeon. *Mahoney v. Doerhoff Surgical Services, Inc.*, 807 S.W.2d 503 (Mo. banc 1991), upheld a statute requiring that a person bringing a claim against a health care provider file an affidavit stating that the plaintiff had obtained a health care provider's written opinion as to the merits of the claim. *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822 (Mo. banc 1991), upheld a ten-year statute of limitation as to architects, engineers and persons furnishing construction services from liability as a result of a defective or unsafe condition of an improvement to real property. *Goodrum v. Asplundh Tree Expert Co.*, 824 S.W.2d 6 (Mo. banc 1992), held granting of exclusive jurisdiction to the Labor and Industrial Relations Commission to determine whether an employee's injuries are the result of an accident or intentional act does not violate the "open courts" provision. *Adams v. Children's Mercy Hosp.*, 832 S.W.2d 898 (Mo. banc 1992), upheld statutory provisions imposing a cap on noneconomic damages, allowing future damages to be paid in installments, and requiring apportionment of fault to include a percentage allocated for released parties. Finally, and most recently, in *Wheeler v. Briggs*, 941 S.W.2d 512 (Mo. banc 1997), this Court upheld the medical malpractice statute of limitations as applied to a mentally incapacitated person.

Some of the results seem incongruous; for example, *Strahler*, which invalidated the medical malpractice statute of limitations as applied to a minor, and *Wheeler*, which upheld the statute as applied to a mentally incompetent person.

■ Despite the inconsistencies, there is a coherent line of reasoning that can be distilled from various opinions over the years that, if followed in this and subsequent cases, will ensure that article I, section 14 retains its vitality while permitting proper deference to legislative enactments. Put most simply, article I, section 14 "prohibits any law that *arbitrarily or unreasonably* bars individuals or classes of individuals from accessing our courts in order to enforce *recognized* causes of action for personal injury." *Wheeler*, 941 S.W.2d at 515 (Holstein, C.J., dissenting) (emphasis added). The test of "arbitrary or unreasonable" is an important clarification of this Court's statement in *Harrell*, 781 S.W.2d at 62, that the "right of access means simply the right to pursue in the courts the causes of action the substantive law recognizes."

---

**14.** Earlier cases are cited and discussed in Martin M. Loring, *Constitutional Law: Statutorily Required Mediation as a Precondition to Lawsuit Denies Access to the Courts*, 45 Mo. L.Rev. 319, n. 25 (1980): "The Missouri Supreme Court has not enunciated any consistent rules of law in its interpretation of [article 1, section 14] although a variety of fact situations have been found to deny or not to deny access to the courts." The author reviewed several cases and concluded that the terms this Court used do not "delineate any precise standards of analysis." *Id.*

The line of analysis articulated by Judge Holstein in *Wheeler* is most appropriate for recognizing the power of the legislature to "design the framework of the substantive law"[15] by abolishing or modifying common law or statutorily based claims, yet keeping a meaningful right to a "certain remedy" where the law recognizes a cause of action. Moreover, this line of analysis is most consistent with the results and rationale of the precedents summarized above.

■ Both the common law and our statutes recognize various legal injuries to person, property and character and provide remedies for such injuries. A statute, as noted, may modify or abolish a cause of action that had been recognized by common law or by statute. *See Blaske*, 821 S.W.2d 822, and *Adams*, 832 S.W.2d 898.[16] But where a barrier is erected in seeking a remedy for a recognized injury, the question is whether it is arbitrary or unreasonable.[17]

### Section 537.053 Erects an Arbitrary, Unreasonable Barrier

■ Here, section 537.053.3 recognizes "causes of action ... by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises ... [to] an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death ..."

The "cause of action,"[18] however, as recognized by the statute can only be asserted where the person licensed to sell intoxicating liquor has been convicted under section 311.310 (including a suspended imposition of sentence) of selling intoxicating liquor where "the sale of such intoxicating liquor is the proximate cause of the personal injury or death...."

If the "certain remedy" guaranteed in article I, section 14 "for every injury to person, property or character" has any meaning, the barrier imposed by section 537.053.3 is invalid. The Kilmers assert that they have suffered an injury, as recognized by section 537.053.3, because they pleaded that the death of Thomas Kilmer, their husband and father, directly resulted from the sale of intoxicating liquor to an obviously intoxicated person by defendant Stefanina's. But there is no certain remedy if the Kilmers' claim is entirely dependent upon whether or not the county prosecutor has prosecuted and obtained a conviction of their alleged wrongdoer for violating section 311.310 by selling intoxicating liquor to an obviously intoxicated person.

Our earlier case on this subject, *Simpson*, 749 S.W.2d 386, is premised on the notion that the plaintiff's claim "was

---

15. *Harrell*, 781 S.W.2d at 62.

16. *See* footnote 24, *infra*.

17. The concept of reasonableness served as the basis for the plurality and the dissenting opinions in *Strahler*, 706 S.W.2d at 13 (Blackmar, J., dissenting), 14–15 (Donnelly, J., dissenting) and 18 (Welliver, J., dissenting). The plurality opinion by Judge Billings concluded that the statute of limitations for a minor was "too severe an interference with ... the right of access to the courts to be justified by the state's interest in remedying a perceived medical malpractice crisis." *Id.* at 12. In *Mahoney*, 807 S.W.2d 503, the Court upheld a statutorily required affidavit in an action against a health care provider against a challenge that the requirement was unreasonable.

In answer, our Court said the requirement "is an exercise of legislative authority rationally justified by the end sought...." *Id.* at 510. *See also Wheeler*, 941 S.W.2d at 515 (Holstein, C.J., dissenting).

18. The term "cause of action" is used interchangeably with "claim" or "claim for relief." The latter terms, which are used in our pleading rules, *see* Rule 55.05, replaced "cause of action," which was the phrase used in code pleading. 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE section 1216 (1990). Missouri's rules retain the requirement of pleading "facts," so "cause of action" and "claim for relief" are both understood to mean the essential factual elements which, if proved, would entitle the pleader to a remedy under the applicable law.

not a legitimate one recognized by law because it was specifically prohibited by the legislature." *Id.* at 389. But a careful reading of the statute, which is set forth in full in footnote 4, shows that this is not so. There is a recognized cause of action.

The legislature purports to eliminate dram shop liability in section 537.053.1 and 537.053.2, but in actuality it does not. Section 537.053.1 declares, "It has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons." Section 1.010 refers to the common law of England, as it existed in the fourth year of the reign of James the First, which was the year 1607. *See Dean v. Lee,* 52 S.W.2d 426 (Mo.App.1932). "Proximate cause" was not a term used in the common law of England in the 17th century, and it was not until the 1840s that the concept was firmly established in negligence law. By that time, Missouri was a sovereignty developing its own common law. *See* Patrick J. Kelley, *Proximate Cause and Negligence Law: History, Theory, and the Present Darkness,* 69 WASH. U.L.Q. 49, 68–70 (1991); *see also Ryan v. New York Central Railroad Co.,* 35 N.Y. 210 (1866), and *Palsgraf v. Long Island R. Co.,* 248 N.Y. 339, 162 N.E. 99 (1928). While the term "proximate cause" probably would have been mysterious to 17th century common law lawyers, the struggle to ascertain the proper form of action in common law pleading had imbedded in it some concerns that today might be discussed in terms of causation. *See Scott v. Shepard,* 96 Eng. Rep. 525 (1773) (discussed in *Ryan,* 35 N.Y. 210 (1866)).

Subsection 2 of 537.053 declares that the holdings of three cases of the 1980s, dealing with dram shop liability, "be abrogated in favor of *prior* judicial interpretation finding the consumption of alcoholic beverage, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person." (Emphasis added). Were we to accept the statute's suggestion that we look to prior cases, we would begin with *Skinner v. Hughes,* 13 Mo. 440 (1850), which held that a dram shop owner who sold intoxicating liquors to a slave without permission from the slave's master was liable to the slave's owner for all damage occasioned by the consumption of the intoxicating liquors. The dram shop liability portion of *Skinner* has apparently never been overruled. *See Moore v. Riley,* 487 S.W.2d 555, 558 (Mo.1972); *see also Lambing v. Southland,* 739 S.W.2d 717, n. 2 (Mo. banc 1987); *Lambing,* 739 S.W.2d at 720 (Blackmar, J., dissenting). Historical references aside, if subsections 1 and 2 of section 537.053 were the whole statute, we would accept the obvious proposition that the legislature had indeed abolished dram shop liability. But, the first two subsections cannot be read in isolation. When we read the third subsection, which is section 537.053.3, as part of the whole statute, it is clear that the legislature did not abolish dram shop liability.

Section 537.053.3 recognizes the cause of action but makes it subject to: (1) a decision by the prosecuting attorney to bring a criminal charge under section 311.310, and (2) a conviction under section 311.310 of the seller of the intoxicating liquor. Where these conditions are met, there is a remedy if the injured party can prove that the sale was the proximate cause of the injury.[19] But where there is no prosecu-

---

**19.** In sections 537.053.1 and 537.053.2 the legislature's purported abrogation of dram shop liability is premised, at least in part, on its notion that "proximate cause" does not exist in such cases. In section 537.053.3, which recognizes a dram shop claim, the statute requires the claimant to show that the sale of liquor was the "proximate cause" of the injury. The statute does not define "proximate cause," which would be an appropriate legislative function, but rather finds that it does not exist in certain cases, which seems to be distinctly a judicial function. Proximate cause is commonly defined by the courts as

tion and conviction, there is no remedy.[20]

Whether an injured party has a remedy under section 537.053 depends entirely upon the decision of the elected county prosecuting attorney. If the county prosecuting attorney decides to prosecute, and obtains a conviction, under section 311.310, then the injured person may file a civil action under section 537.053. If, however, the county prosecuting attorney decides not to prosecute under section 311.310, or if the dram shop operator is not convicted in the criminal case, then the injured party has no redress for the injury that is recognized by section 537.053. The prosecutor's decision may, of course, be vulnerable to inevitable pressures of local politics or other factors unrelated to the merits, yet is wholly immune from review.

■ Moreover, the statute on its face denies entirely a remedy to a plaintiff whose wrongdoing drunk driver was a patron who was over-served by a dram shop operator in another state and causes injury in Missouri. For example, assuming a defendant's conduct is sufficient to support

personal jurisdiction, an Illinois dram shop operator who solicits patrons from Missouri would certainly be subject to liability under Missouri law if his patron drove across the border and injured a Missourian, except for the fact that that particular defendant could not be subject to prosecution under section 311. 310 because it is not a Missouri licensee. Thus there is a class of plaintiffs who have suffered a recognized injury but have absolutely no remedy against the wrongdoer because the statute only applies to Missouri licensees.[21]

In this case, a prosecuting attorney, and not the legislative branch, decides whether there is a cause of action under section 537.053.3. This provision violates separation of powers because the determination of whether a civil claim for relief exists is within the province of the legislature, or in the absence of legislative enactment, with the court as a matter of common law. *Simpson*, 749 S.W.2d 386, upholds this statute against the separation of powers challenge as well as the open courts chal-

that cause that, in a natural and continuous sequence, unbroken by any efficient intervening cause, produced the result complained of, and without which the result would not have occurred. *See Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990). In the Missouri Approved Instructions, the term "proximate cause" is not used; juries are instructed on causation to find whether the plaintiff's injury was the direct result of the defendant's breach of duty, and more than one cause may be found. In the context of dram shop liability, the death of plaintiffs' decedent may have been the direct result of the negligence of the intoxicated driver as well as the wrongdoing of the tavern operator in serving liquor to an obviously intoxicated person. *See* MAI 19.01, 33.03 and *Callahan v. Cardinal Glennon ·Hosp.*, 863 S.W.2d 852 (Mo. banc 1993).

20. *Simpson*, 749 S.W.2d 386, is premised on the notion that section 537.053 is within the prerogative of the legislature because it is an abolition of dram shop causes of action, and the creation of an entirely new cause of action in section 537.053.3. In overruling *Simpson*, we do not adopt, nor need we reach, the contention of the *Simpson* dissenting opinion that a legislature's abolition of common law or statutory causes of action is subject to

scrutiny under article I, section 14, and that there must be an adequate alternative remedy. *Kilcher*, 749 S.W.2d at 394. *See also* footnote 23, *infra*. Our analysis in this case is premised simply on the fact that the legislature in section 537.053.3 recognizes a dram shop injury. The critical issue thus is whether the barriers to the remedy for that recognized injury are arbitrary or unreasonable. For the purposes of our analysis, it does not matter whether the recognized injury is a product of the longstanding common law or a recent statutory enactment.

21. This of course could be described, as well, as a violation of the constitutional guarantee of equal protection of the laws. *See* Mo. Const. art. I, sec. 2. A statute that creates arbitrary classifications that are irrelevant to the achievement of the statute's purpose may be struck down because the arbitrary classifications violate equal protection. *See Kansas City v. Webb*, 484 S.W.2d 817 (Mo. banc 1972), and cases cited therein. But in this case, the arbitrary denial of a remedy for a recognized injury can be addressed under the "open courts" provision without reaching the equal protection issue.

lenge. That case provided circular reasoning on the separation of powers issue. The only authority relied upon by *Simpson* is the rule of construction that the "plain, obvious and rational meaning of the statute is always to be preferred to any single 'curious, narrow, or strained construction.'" 749 S.W.2d at 391 (citation omitted). There is nothing "curious, narrow, or strained" about striking down the dependency on the executive branch that section 537.053 creates. The separation of powers problem in section 537.053 can be illustrated by the following questions: Would it be permissible for a statute to delegate to the state supervisor of liquor control the duty of ascertaining which dram shop cases were the most serious in deciding which plaintiffs should have a right to pursue a claim? Or, would it be permissible to delegate the permission to bring the claim to a member of the legislative branch, for example the tavern operator's state senator? After all, if this function can be delegated to officials of the executive branch, why not to members of the legislative branch? Each of these possibilities invites arbitrary refusals of the right to pursue a claim.

The test this Court applies is whether access to court for a recognized injury is subject to an arbitrary or unreasonable barrier. The prerequisite of a criminal conviction, in order for a plaintiff to proceed with a civil action, is as we have discussed, both arbitrary and unreasonable. *Simpson* is overruled.[22]

The dissent raises severability under section 1.140 [23] and contends that our conclusion that section 537.053.3 is unconstitutional leaves only subsections 1 and 2, which purport to abolish liability. What the dissent does not appreciate is that the only constitutionally offensive provision of section 537.053.3 is that part requiring a criminal prosecution and conviction as a procedural prerequisite to bringing a cause of action against a licensed seller of liquor by the drink. Properly applying the statutory presumption of severability of an unconstitutional provision of the statute, subsection 3 reads:

> Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises ... if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person.

Section 1.140 requires us to preserve the nonoffending portions of the statute, unless we determine that the legislature would not have enacted the valid provisions without the void one. To do so, we would have to assume that the legislature intended no dram shop liability. But in section 537.053.3, the legislature did enact

---

**22.** Because the statute, section 537.053, applies only to commercial liquor licensees, our holding does not overrule *Andres v. Alpha Kappa Lambda Fraternity*, 730 S.W.2d 547 (Mo. banc 1987), where we declined to establish liability of a social host. It also should be noted that Thomas Kilmer was not the patron, but rather was allegedly an innocent victim of the dram shop owner's patron which is the basis for asserting that the dram shop is also liable. While the statute does not exclude liability of a dram shop operator for injuries or death suffered by a patron, it would seem exceedingly difficult to make a submissible case on behalf of a plaintiff whose own consumption of alcohol was the cause of his injuries. *See Andres*, 730 S.W.2d at 553 (Blackmar, J., concurring).

**23.** Section 1.140 provides:

> The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

dram shop liability, so it would be wrong for us to assume the legislature intended otherwise. Therefore, consistent with section 1.140, we leave it to the legislature to decide whether the statute, as it remains, should be retained, repealed or modified in some constitutionally appropriate manner.

### Conclusion

In summary, the open courts provision is explicitly in our constitution, and though we give deference to legislative enactments, those enactments must yield to constitutional mandates. Claims for injuries are recognized by common law and by statute. The legislature may abolish such recognition.[24] If the legislature had eliminated dram shop liability entirely, the Kilmer family would have no claim against defendant Stefanina's, which served liquor to defendant Hui Chan Mun when the latter allegedly was obviously intoxicated. But where there is an injury that is legally recognized, as the dram shop injury is recognized in section 537.053.3, the statute may not erect arbitrary or unreasonable barriers. A person who has an injury recognized by law has a constitutional right to a "certain remedy." A barrier that subjects a recognized injury to the discretion the prosecuting attorney violates this constitutional provision.

The Kilmers may pursue their remedy.[25] We reverse the trial court's judgment, and remand the cause for further proceedings.

PRICE, C.J., WHITE and HOLSTEIN, JJ., concur;

LIMBAUGH, J., dissents in separate opinion filed;

COVINGTON and BENTON, JJ., concur in opinion of LIMBAUGH, J.

STEPHEN N. LIMBAUGH, Jr., Judge, dissenting.

I respectfully dissent.

The majority misapplies the open courts provision to afford plaintiffs a cause of action for dram shop liability that the statute does not permit, and in the process overrules *Simpson v. Kilcher*, 749 S.W.2d 386 (Mo. banc 1988), without giving *Simpson* the courtesy of addressing its compelling rationale, much less paying any consideration to the principles of stare decisis.

### I.

I have no disagreement with the majority's statement of the law regarding Missouri's "open courts" provision, so far as the statement goes. As the majority explains, "article I, section 14, 'prohibits any law that *arbitrarily or unreasonably* bars individuals or classes of individuals from accessing our courts in order to enforce *recognized* causes of action for personal

**24.** While our cases speak of the legislature's prerogative to abolish a cause of action, we do not find an instance where the legislature has abolished a claim in its entirety. Cases that contain such language include *Blaske*, 821 S.W.2d at 832–833, which upheld a statute of limitations, and *Adams*, 832 S.W.2d at 905, which upheld a statutory cap on non-economic damages. In both instances, the injured party is able to recover for his injury, subject to the limitation as to time and damages, respectively. In this case, of course, if the legislature were to abolish dram shop liability in its entirety, a plaintiff would still have a cause of action against the allegedly drunk and presumably negligent driver. Similarly, a statute that grants immunity to a class of defendants, as section 354.125 does for health services corporations, does not eliminate an injured person's claim against

others who may be liable for his injury. *See Harrell*, 781 S.W.2d 58. Nor does the constitutional principle apply to grants of sovereign immunity for the state and its political subdivisions. *See State ex rel. Board of Trustees of the City of North Kansas City Memorial Hosp. v. Russell*, 843 S.W.2d 353 (Mo. banc 1993) (Hospital operated by city had immunity from suit, but plaintiff allowed to bring suit against others). Cases from other jurisdictions are collected and discussed in Schuman, *supra*, note 7, at 1205–1213.

**25.** We express no opinion on the merits of the Kilmers' claim that the restaurant served an obviously intoxicated patron which directly resulted in the death of Thomas Kilmer. That, of course, must still be proved at trial.

injury,' ... yet it does not prohibit the legislature from modify[ing] or abolish[ing] a cause of action that had been recognized by the common law or by statute." (citations omitted). I would add to these principles, although perhaps it is implicit in them, that statutes imposing procedural bars to access are to be distinguished from statutes that change the common law by the elimination or limitation of a cause of action, and that only the former are impermissible. *Adams v. Children's Mercy Hospital,* 832 S.W.2d 898, 905 (Mo. banc 1992).

A.

The majority misapplies these principles by holding that the conviction requirement of section 537.053.3 arbitrarily and unreasonably bars individuals from accessing our courts in order to enforce the statutorily recognized cause of action for dram shop liability. In my view, the conviction requirement is a substantive element of the statutory cause of action rather than a procedural bar. This same idea, as stated in *Simpson v. Kilcher,* 749 S.W.2d at 389, is that the conviction requirement "is not a precondition to access to the courts – it is a condition to the existence of a cause of action." The language of the statute shows this clearly:

> Notwithstanding subsections 1 and 2 of this section, a cause of action may be brought by or on behalf of any person who has suffered personal injury or death against any person licensed to sell intoxicating liquor by the drink for consumption on the premises who, pursuant to section 311.310, RSMo, has been convicted, or has received a suspended imposition of the sentence arising from the conviction, of the sale of intoxicating liquor to a person under the age of twenty-one years or an obviously intoxicated person if the sale of such intoxicating liquor is the proximate cause of the personal injury or death sustained by such person.

Section 537.053.3.

The structure of the statute, which was the basis of the *Simpson* Court's analysis and which, inexplicably, the majority makes no effort to address, consists of four substantive elements or conditions to the cause of action:

A. plaintiff suffered personal injury or death,

B. defendant was licensed to sell intoxicating liquor by the drink,

C. pursuant to section 311.310, RSMo, defendant was convicted, or received a suspended imposition of sentence of the sale of intoxicating liquor ... to an obviously intoxicated person, and

D. the sale of such intoxicating liquor was the proximate cause of the personal injury or death sustained by plaintiff.

In order to find the statute constitutionally infirm by characterizing the conviction requirement as a procedural bar rather than a substantive element, the majority necessarily rewrites the statute to delete element "C," the conviction requirement, from the cause of action proper. Only then does the conviction requirement stand independent from the elements of the cause of action and thus allow the majority to challenge it as a procedural bar.

B.

Even if the conviction requirement is somehow independent from the elements of the cause of action proper, it still does not follow that the requirement is a "procedural" bar that impermissibly denies access to the courts. To be sure, the conviction requirement is a precondition to the cause of action, but it is a substantive precondition that is not dependent on any procedural requirement that plaintiff must satisfy. Indeed, there can be no procedural requirement, or procedural bar, to a cause of action that has not yet accrued, and here the cause of action cannot accrue until the substantive precondition of a criminal conviction is met.

Examples of procedural bars that violate the open courts provision, as set out in the majority opinion, include 1) *State ex rel. Cardinal Glennon Memorial Hosp. for Children v. Gaertner*, 583 S.W.2d 107 (Mo. banc 1979), in which this Court invalidated a requirement that a medical malpractice plaintiff submit his or her claim to a professional liability board for a recommendation before filing a lawsuit in court; 2) *Schumer v. City of Perryville*, 667 S.W.2d 414 (Mo. banc 1984), in which this Court invalidated the requirement, as applied to a minor who was legally incapable of bringing his own action, of giving notice of his claim before suing a municipality; and 3) *Strahler v. St. Luke's Hosp.*, 706 S.W.2d 7 (Mo. banc 1986), in which this Court held that the two-year statute of limitations for actions against health care providers, as applied to minors, violated the open courts provisions by cutting off a minor's claim before the minor was able to bring suit on his or her own behalf. In each of these cases, and contrary to the case at hand, the statute required plaintiff to undertake some unreasonable or arbitrary, or even impossible act or procedure in order to perfect the cause of action after it had already accrued. In *Cardinal Glennon*, plaintiff could not file his cause of action before presenting the case to a professional liability board for review; in *Schumer* and *Strahler*, plaintiffs, who were minors, were required to bring their cause of action within a statute of limitations that expired before they attained majority. Furthermore, in each of these cases, and unlike the case at hand, the unconstitutional procedural bar kept plaintiffs from bringing suit on a cause of action that had already accrued. There is simply no connection between the conviction requirement in this case and the kinds of unconstitutional procedural requirements in these earlier cases.

## II.

The majority's analysis of the secondary issues regarding separation of powers and equal protection is equally unpersuasive.

The separation of powers claim, as I understand it, is that the legislative department wrongfully delegated to executive department prosecutors the authority to determine the existence of the cause of action for dram shop liability. This delegation purportedly occurs by virtue of the fact that prosecutors ultimately decide whether to file or refuse to file charges that might result in a criminal conviction under section 311.310 – the conviction requirement of section 537.053.3. As with the open courts claim, the majority is unwilling to acknowledge that the conviction requirement is a substantive element of the cause of action. The cause of action is set entirely by the legislature, and prosecutors take no part in dictating the elements of that cause of action. Furthermore, there is no legislative delegation of power to the prosecutors for the purpose of allowing them to dictate, at least in part, if and when a cause of action exists. The role of prosecutors in securing criminal convictions under section 311.310 is solely to fulfill their statutory duty under section 56.060, RSMo 1994, to file charges for violating the criminal laws of this state. Regarding the alleged equal protection violation, I need only reiterate the *Simpson* Court's reasoning that the conviction requirement's purpose – "[to confine] the liability of liquor licensees to those cases where conduct is so flagrant it becomes objectively provable by criminal conviction" – provides a rational basis for that element of the cause of action. *Simpson v. Kilcher*, 749 S.W.2d at 392.

## III.

Assuming, arguendo, that section 537.053.3's conviction requirement is, in fact, an open courts, separation of powers or equal protection violation, plaintiffs still are left without a cause of action. The conviction requirement cannot be severed from section 537.053.3 so to leave the balance of the section intact, and yet severance is essential to the majority's recognition of a statutory cause of action that is

not limited by the conviction requirement. Whether the conviction requirement is a substantive element of the cause of action for dram shop liability, as I see it, or an unconstitutional procedural bar to the cause of action, as the majority sees it, the legislature made abundantly clear that the only "recognized" cause of action is a cause of action limited by the conviction requirement. If the conviction requirement is unconstitutional, then there is no cause of action at all.

The severability issue is governed by section 1.140, RSMo 1994, which states:

The provisions of every statute are severable. If any provision of a statute is found by a court of competent jurisdiction to be unconstitutional, the remaining provisions of the statute are valid unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

In this case, the legislative intent on which the severability issue depends is found in sections 537.053.1 and 537.053.2, the two other sections of the dram shop statute. In fact, these sections are express statements of legislative intent, and they are couched in words as clear and forceful as possible:

1. Since the repeal of the Missouri Dram Shop Act in 1934 (Laws of 1933–34, extra session, page 77), it has been and continues to be the policy of this state to follow the common law of England, as declared in section 1.010, RSMo, to prohibit dram shop liability and to follow the common law rule that furnishing alcoholic beverages is not the proximate cause of injuries inflicted by intoxicated persons.

2. The legislature hereby declares that this section shall be interpreted so that the holdings in cases such as *Carver v. Schafer*, 647 S.W.2d 570 (Mo.App. 1983); *Sampson v. W.F. Enterprises, Inc.*, 611 S.W.2d 333 (Mo.App.1980); and *Nesbitt v. Westport Square, Ltd.*, 624 S.W.2d 519 (Mo.App.1981) be abrogated in favor of prior judicial interpretation finding the consumption of alcoholic beverages, rather than the furnishing of alcoholic beverages, to be the proximate cause of injuries inflicted upon another by an intoxicated person.

Despite the legislative intent, or rather the legislative mandate, that there will be no dram shop liability in Missouri except for the limited cause of action in section 537.053.3, the majority severs the limitation and holds that a cause of action exists, nonetheless. The effect of severing the limitation on the cause of action for dram shop liability is to convert the cause of action to one with essentially the same elements as the court-made action that first appeared in the early 1980s and that the legislature now expressly disallows.

Using the terminology of section 1.140, I would hold that the valid provisions of section 537.053.3 (the cause of action for dram shop liability) are so essentially and inseparably connected with, and so dependent upon, the void provision, (the conviction requirement) that it cannot be presumed the legislature would have enacted the valid provisions without the void one, and further, that the valid provisions of section 537.053.3, standing alone, are incomplete and incapable of being executed in accordance with the legislative intent. Under section 1.140, therefore, and assuming that the conviction requirement is an open courts, separation of powers, or equal protection violation, the provisions of section 537.053.3 must be stricken in their entirety.

As stated, however, I would not reach the severance issue because I would hold, in the first instance, that the conviction requirement is not unconstitutional. For

**558**

that reason I would affirm the judgment of the trial court.