**TRAVELERS INDEMNITY COMPANY OF AMERICA, Appellant,**

v.

**THE WILLIAMS–CARVER COMPANY, Respondent.**

**No. WD 71181.**

Missouri Court of Appeals, Western District.

Sept. 7, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Nov. 2, 2010.

Application for Transfer Denied Dec. 21, 2010.

---

Robert W. Cockerham, Esq., and Corey L. Kraushaar, Esq., St. Louis, MO, for appellant.

Stephen D. Manz, Esq., and Theresa S. Hall, Esq., Kansas City, MO, for respondent.

Before Division One: LISA WHITE HARDWICK, Presiding Judge, JAMES M. SMART, JR. and ALOK AHUJA, Judges.

LISA WHITE HARDWICK, Chief Judge.

Travelers Indemnity Company of America ("Travelers") appeals from a summary judgment ruling that its negligence claim against the Williams–Carver Company ("Williams–Carver") is barred by the statute of repose in Section 516.097.[1] Travelers contends the circuit court erred in granting summary judgment because there are genuine issues of material fact as to whether the affirmative defense in Section 516.097 is applicable. For reasons explained herein, we affirm the summary judgment.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Dell Foods, Inc. ("Mr. Dell") prepares frozen potato products at its production facility in Kearney, Missouri. In 1987, Mr. Dell hired Dennis Watson Construction ("Watson") as general contractor for the construction of an addition to the production facility. The proposed addition included an insulated room to be used as a large walk-in freezer.

Watson retained Williams–Carver to plan and construct a refrigeration system for the freezer room. Watson also hired Mid–Continent Industrial Insulation ("Mid–Continent") to build the enclosure of the room with insulated wall panels. Construction of the addition to the production facility was completed in 1988.

On February 28, 2001, a fire was intentionally set by a Mr. Dell employee in a box room used for storage of packaging and shipping materials. The box room was located adjacent to the freezer room. The two rooms were separated by a concrete block wall, but there was a gap of approximately sixteen to twenty-four inches between the top of the wall and I-beam on the ceiling. The fire damaged the facility and frozen potato products by spreading from the box room, over the top of the concrete wall, into the freezer room, and beyond.

As the insurer for Mr. Dell, Travelers paid in excess of $5,000,000 for the damage from the fire and received an assignment of Mr. Dell's rights regarding the loss. In August 2005, Travelers filed a petition against Williams–Carver for negligent installation of the freezer. The petition alleged that Williams–Carver should have separated the freezer room from the adjacent area with a floor-to-ceiling firewall. The petition further alleged that Williams–Carver concealed the defective gap in the wall of the freezer room and failed to disclose it to Mr. Dell.

After discovery, Williams–Carver moved for summary judgment based on the Statute of Repose, Section 516.097, which provides a ten-year statute of limitations for actions for damages arising from the design, planning, or construction of any improvement to real property, unless any defect or deficiency in the improvement was concealed and directly resulted in the defective or unsafe condition. The court granted the motion, concluding that Travelers' claims against Williams–Carver were filed beyond the ten-year statute of limitations and did not fit within the conceal-

---

1. All statutory citations are to the Revised Missouri Statutes 2000, as updated by the Cumulative Supplement 2009.

ment exception of Section 516.097.4(2). Travelers appeals the summary judgment.

## STANDARD OF REVIEW

The propriety of summary judgment is a question of law subject to our *de novo* review. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We view the record in the light most favorable to the party against whom judgment was entered and accord that party the benefit of all reasonable inferences. *Id.*

"The key to summary judgment is the undisputed right to judgment as a matter of law...." *Id.* at 380. Summary judgment is proper when the movant establishes that there is no genuine dispute as to any material fact. *Id.* at 378. Once the moving party has established a right to judgment as a matter of law, the non-moving party must show by affidavits, depositions, answers to interrogatories or admissions that one or more of the material facts shown by the movant as above dispute is, in fact, genuinely disputed. *Id.* at 381. The non-movant must present "specific facts showing that there is a genuine issue for trial." *Id.* (*quoting* Rule 74.04(c)(2))

## ANALYSIS

Travelers contends the court erred in granting summary judgment because genuine issues of material fact exist as to whether its negligence claim against Williams–Carver is barred by the statute of repose in Section 516.097. The statute provides in relevant part:

1. Any action to recover damages for economic loss, personal injury, property damage or wrongful death arising out of a defective or unsafe condition of any improvement to real property, including any action for contribution or indemnity for damages sustained on account of the defect or unsafe condition, shall be commenced within ten years of the date on which such improvement is completed.

2. This section shall only apply to actions against any person whose sole connection with the improvement is performing or furnishing, in whole or in part, the design, planning or construction, including architectural, engineering or construction services, of the improvement.

. . . .

4. This section shall not apply:

. . . .

(2) If a person conceals any defect or deficiency in the design, planning or construction, including architectural, engineering or construction services, in an improvement for real property, if the defect or deficiency so concealed directly results in the defective or unsafe condition for which the action is brought[.]

§ 516.097.

In Point I on appeal, Travelers argues the statute of repose is inapplicable because: (a) Williams–Carver had more than one connection to the defective refrigeration system, in that it sold, distributed, assembled, and installed the defective system; and (b) William–Carver installed a prefabricated refrigeration system, which did not constitute "performing or furnishing construction ... including construction services" under Section 516.097.

The Missouri Supreme Court has defined the phrase "sole connection with the improvement" in Section 516.097 as "a connection to a defective or unsafe condition of an improvement or real estate giving rise to liability." *Magee v. Blue Ridge Prof'l Bldg. Co.*, 821 S.W.2d 839, 843 (Mo. banc 1991). Missouri applies an "activity

analysis" to determine whether a defendant's activity is solely connected with the design, planning and construction of the improvement. *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822, 837 (Mo.banc 1991). "[I]f a defendant has any connection that gives rise to liability with respect to an improvement other than by design, planning, or construction, Section 516.097 is not available as an affirmative defense." *Lay v. P & G Health Care, Inc.*, 37 S.W.3d 310, 321 (Mo.App.2000). The defendant's sole connection to the defective or unsafe improvement to real property must be as an architect, engineer, or builder. *Id.*

Travelers cites *Lay* in arguing that Williams–Carver had more than one connection to the defective refrigeration system. In *Lay,* our court determined that a defendant elevator company served a dual role by selling and installing a defective dumbwaiter that fell down the shaft and injured the repairman working on it. 37 S.W.3d at 322. The defendant had purchased the dumbwaiter from a manufacturer, sold it to the facility owner, and installed it on-site. *Id.* Because the defendant had more than one relationship with the defective dumbwaiter—as both seller and installer—we found the "sole connection" requirement of Section 516.097 was not met, and the ten-year statute of repose did not apply. *Id.*

■ As compared to *Lay*, Travelers asserts that Williams–Carver sold, distributed, assembled, and installed a prefabricated refrigeration system. We note, however, the undisputed evidence shows that Williams–Carver obtained all of the component parts from various vendors and then constructed the refrigeration system on site. Accordingly, there are important distinctions between this case and the facts in *Lay*. Williams–Carver did not sell and install a prefabricated product; rather it configured and manufactured a refrigeration system by purchasing, assembling, and installing the component parts into the freezer room addition of Mr. Dell's production facility.

■ A manufacturer that fabricates or assembles building materials or component parts incorporated within the real property in the construction of an improvement is "performing or furnishing ... construction services" under Section 516.097.2. *Blaske,* 821 S.W.2d at 837. The statute does not protect a manufacturer whose standard product is fabricated at the manufacturer's factory, made available to the general public, and then "furnished for the inclusion in the improvement by the persons constructing the improvement under circumstances where the manufacturer has no substantial on-site construction activity." *Id.* To invoke the affirmative defense, a manufacturer must have "substantial participation at the construction site in significant activities in installing or incorporating the product into the real property." *Id.*

In support of its motion for summary judgment, Williams–Carter presented deposition testimony and affidavits to establish that it planned the refrigeration system, obtained the component parts, and built the system inside the walls of the freezer room. An architect provided Williams–Carver with certain criteria including the square footage of the area to be cooled, the basic size of the freezer room, and the approximate temperature requirements. The architect also supplied the thickness and specifications of the freezer room walls to be constructed by Mid Continent, so the heat load coming into the freezer room could be determined and taken into account in planning and configuring the equipment for the refrigeration system. Local weather conditions, personnel traffic in and out of the area, type and location of lighting, and door

locations were also factors considered by Williams–Carver.

Taking this information into account, Williams–Carver calculated the freezer room's refrigeration load (in tons of refrigeration) and decided on the type of system and equipment required to maintain the room at a temperature below freezing. Layout and shop drawings were created to identify the location of the piping, mechanical devices, and electrical equipment within the confines of the building. Williams–Carver then selected and purchased the following equipment and supplies necessary to fabricate the refrigeration system: compressors, oil separators, starters, elements, gauges, switches, valves, freezer coils, condensers, condenser tanks, solenoid flanges and thermostats, beams, miscellaneous hardware, pitch pans, thread rod, elbows, pipe and miscellaneous fittings, time relays, electric boxes, drain hangers, insulation material, bronze fittings, and wood hangers.

At the job site, twenty-one foot lengths of steel pipe and fittings were laid out, cut-to-size, and welded by Williams–Carver. Per its plans, Williams–Carver built the system to include various valves and controls. Piping was placed on roof stands and welded together by Williams–Carver using various valves and fittings. Williams–Carver customized control stations for the air units by cutting them to size and connecting them by welds.

Unlike the dumbwaiter in *Lay,* the refrigeration system here was not a pre-designed, mass-produced refrigerator that was purchased, re-sold to Mr. Dell, and merely installed by Williams–Carver. It was a system configured and fully constructed by Williams–Carver on-site as an improvement to Mr. Dell's production facility. Williams–Carver's sole connection with the improvement was as the builder of the refrigeration system. The work

done by Williams–Carver falls within the test for the manufacture of a specialized system that required substantial on-site construction as discussed in *Blaske.*

Travelers argues the circuit court improperly weighed conflicting statements made by Richard Carver, of the Williams–Carver Company, in granting summary judgment. We disagree that Mr. Carver made statements in his affidavit that contradicted his earlier deposition testimony about whether the refrigeration system was prefabricated.

During his deposition on September 8, 2006, Mr. Carver agreed with Travelers's counsel that Williams–Carver purchased "pre-fabbed" parts that "work[ed] as a whole system together to cool the freezer." Two years later, Mr. Carver stated in his affidavit:

> Based on the refrigeration load, Williams–Carver decided on the type of system required to refrigerate the room. Various options as to the system's configuration and layout were considered by Williams–Carver. Williams–Carver determined the equipment and parts that it needed to purchase from various manufacturers and suppliers in order to construct the refrigeration system.

The earlier deposition testimony established that the "pre-fabbed" parts Mr. Carver referred to included evaporators, coolers, pumps, coils, condensers, and the water pump. Contrary to Travelers' suggestion on appeal, Mr. Carver did not testify that Williams–Carver purchased a prefabricated refrigeration system. He clearly testified that Williams–Carver purchased a wide variety of prefabricated component parts that it used to construct "a whole system . . . to cool the freezer." This testimony was not inconsistent with his later statement in the affidavit that "Williams–Carver determined the equipment and parts that it needed to purchase

from various manufacturers and suppliers in order to construct the refrigeration system." Accordingly, the testimony and statements of Mr. Carver did not create a genuine issue of fact as to whether Williams–Carver configured and constructed a refrigeration system at Mr. Dell's production facility.

Travelers's damages lawsuit against Williams–Carver was filed more than ten years after the improvements to Mr. Dell's production facility were completed in 1988. Williams–Carter properly invoked the affirmative defense of the ten-year statute of repose in Section 516.097 by presenting uncontroverted evidence that its sole connection with the improvements was to perform or furnish construction services. Accordingly, Williams–Carter was entitled to summary judgment unless the concealment exception in Section 516–097.4(2) is applicable. Point I is denied.

■ In Point II, Travelers argues that Williams–Carter is not entitled to protection under Section 516.097 based on the concealment exception. Travelers contends there is a genuine issue of material fact as to whether Williams–Carver "had superior knowledge of the defective condition consisting of a highly flammable freezer wall next to the gap above the adjacent firewall, and concealed this information from Mr. Dell Foods."

■ Pursuant to Section 516.097.4(2), the ten-year statute of repose does not apply "[i]f a person conceals any defect or deficiency in the design, planning or construction ... in an improvement for real property," and the concealed defect or deficiency "directly results in the defective or unsafe condition for which the action is brought." As used in the statute, the term "conceals" means "an affirmative act, something actually done directly intended to prevent discovery or to thwart investigation." *Magee*, 821 S.W.2d at 844; *see*

*also Butler v. Mitchell–Hugeback, Inc.*, 895 S.W.2d 15, 19–20 (Mo.banc 1995).

Travelers asserts that Williams–Carver was aware of the gap above the firewall because Mr. Carter "advised" the general contractor, Dennis Watson, to allow for the gap or a man-way to service the walk-in freezer. Travelers argues the gap was a defective condition, that it was concealed by the wall covering, and that the defective condition directly resulted in the spread of the fire that damaged Mr. Dell's production facility and products.

We disagree that a genuine factual dispute exists with regard to whether Williams–Carver concealed a defective condition. First, we find no evidence indicating that Williams–Carver "advised" Dennis Watson, the general contractor, to allow for a gap above the wall. The only evidence remotely addressing this subject is an April 5, 1988 letter from Mr. Carver to the architect, Herman Scharhag, providing the following update on the progress of the construction project at Mr. Dell:

> Herman, I also talked with Mr. [Dell] Johnson about running the freezer headers on top of the building roof instead of on the freezer roof. This was suggested to allow for ease of maintenance (otherwise some sort of man way should be installed).

> Your cost for running pipe on the roof (excluding sealing of roof penetrations).... $1,815.00[.]

This letter in no way suggests that Williams–Carver "advised" *Mr. Watson* to take any action. Mr. Carver contacted the architect to resolve a potential maintenance issue and provide a cost estimate for placing the pipes on the roof. The suggested "man way" simply indicates the need for access to the pipes, but it does not infer the need for a gap in the wall between the box room and the freezer

room. The letter does not indicate that Williams–Carver had any superior knowledge about a potential fire hazard or that it engaged in an affirmative act to prevent the discovery of a defective condition.

Second, the record does not establish that Williams–Carver had any control over the height of the freezer wall. Travelers presented an affidavit from its expert, Carl Martin, who conducted an on-site investigation of the Mr. Dell facility to provide an engineering evaluation of the fire. Based on the investigation, Mr. Martin reported that Mr. Carver, the architect, and Mr. Watson had "discussed" a change in the height of the freezer wall to allow for ventilation of the area above the freezer. However, the affidavit does not indicate that Williams–Carver had any decision making power regarding the height of the wall or whether Williams–Carver advocated or recommended against changing the height of the wall. The architect acknowledged in his deposition that Williams–Carver had no authority to shorten or otherwise change the height of the wall. Moreover, the record is undisputed that Williams–Carver did not build the freezer room. Mid–Continent built the freezer room by erecting insulated wall panels inside Mr. Dell's production facility. The freezer room was largely completed before the refrigeration system was constructed by Williams–Carver.

■ Third, the deposition testimony of several witnesses established that the gap between the top of the wall and the roof was open and obvious to everyone. A Mr. Dell employee had actually climbed over the wall and into the gap to check the roof for leaks. To rebut the evidence of openness, Travelers alleges the defective nature of the gap was "latent" and, therefore, its significance should have been disclosed by Williams–Carver. However, latent defects are not the same as concealed defects. *Fueston v. Burns & McDonnell*

*Eng'g Co.*, 877 S.W.2d 631, 638 (Mo.App. 1994). "Conceals" means more than a failure to reveal information allegedly known. *Butler*, 895 S.W.2d at 19–20. Rather, it carries the "implication of intentional conduct designed to prevent discovery." *Id.* at 19. As the circuit court noted:

> Plaintiff argues that the Defendant Williams–Carver was required not only to disclose the existence of the gap in the separation wall, but also *the significance* of the gap. It is uncontroverted that the gap in the wall was open and obvious to anyone who looked (including the architect in an inspection). However, plaintiff asserts that the significance or danger created by the gap in the wall was not revealed, thus bringing this claim within the concealment exception in the statute. This argument goes far beyond the plain meaning of the concealment exception in the statute, and has been rejected by the Missouri Supreme Court in *Butler*.

There is no evidence that Williams–Carver acted affirmatively to prevent the discovery of the gap in the wall. Given the open and obvious nature of the alleged defective condition, there is no factual dispute as to whether the concealment exception in Section 516.097.4(2) could be applied. Point II is denied.

### CONCLUSION

Summary judgment was proper because the undisputed facts show that: (1) Travelers's damages claim against Williams–Carver is barred by the ten-year statute of repose in Section 516.097; and (2) the concealment exception therein is not applicable. We affirm the circuit court's judgment.

All Concur.